**George LABAR, Jr., Appellant,**

v.

**Paul COX, Appellee.**

**No. 1957.**

Court of Appeals of Texas,
Corpus Christi.

May 20, 1982.

Rehearing Denied June 17, 1982.

Charles R. Cunningham, Corpus Christi, for appellant.

Kim Cox, Corpus Christi, for appellee.

Before BISSETT, KENNEDY and GON-ZALEZ, JJ.

## OPINION

BISSETT, Justice.

The appellee has filed a motion for rehearing in which he contends that this Court has misread the testimony presented at trial. Because of the confusion our original opinion has caused the appellee, we withdraw that opinion and substitute this opinion for the original.

This suit was brought by Paul Cox [hereinafter "the appellee"] against George Labar, Jr. [hereinafter "the appellant"] to recover on a promissory note executed by George Labar, Jr., and payable to Paul Cox and Dan Bates. The latter (Dan Bates) refused to join the appellee as a plaintiff and was brought into the case as an involuntary plaintiff. The appellant asserted several defenses including delivery for a special purpose which never occurred. *See* Tex.Bus. & Comm.Code Ann. § 3.306(3) (Tex.U.C.C.) (Vernon 1968). Following a trial without a jury, judgment was rendered in favor of the appellee for $16,958.72 with interest. We reverse and remand.

The appellant first complains of the trial court's failure to timely file findings of fact and conclusions of law. He contends that since the trial court did not file its findings of fact and conclusions of law until *after* the transcript and statement of facts were filed in this Court, the judgment of the trial court should be reversed and the cause remanded for a new trial.

The judgment of the trial court was signed on March 25, 1981. The appellant timely filed a motion for new trial, which was overruled by operation of law on June 8, 1981. The appellant twice requested the trial court to file findings of fact and conclusions of law. The trial court, however, failed to respond within the time limits provided in Rule 297, T.R.C.P. On June 30, 1981, ninety-seven days after the judgment was signed, the appellant filed the tran-

script and statement of facts in this Court. Thereafter, on September 18, 1981, following an extension of time, the appellant filed his brief in which his sole point of error complained of the trial court's failure to file its findings. Six days later, the appellee obtained the trial court's signature on its findings of fact and conclusions of law. On November 16, 1981, the appellant filed his objections to the trial court's findings, but the record does not indicate what action, if any, the trial court took on these objections. The appellee filed a supplemental transcript in this Court on December 1, 1981, which contained the findings and conclusions of the trial court. On February 1, 1982, the appellant filed a supplemental brief raising eight points of error, seven of which complain of various findings and conclusions of the trial court.

When a timely demand for findings of fact and conclusions of law is made, the trial court *must* file them "within thirty days after the judgment or order overruling a motion for new trial is signed, or the motion is overruled by operation of law." Rule 297, T.R.C.P. If the trial judge fails to file his findings within the time allotted, the party who made the demand must call the omission to the attention of the judge, by written notice, within five days after the thirty day period has expired. Rule 297, T.R.C.P. Once this is done, the trial judge has five more days within which to comply with the demand. Rule 297, T.R.C.P.

Upon applying the provisions of Rule 297 to the instant case, we find that the time for filing findings of fact and conclusions of law ended on July 15, 1981, five days after the appellant notified the trial court of its failure to comply with his demand. As already noted, the transcript was filed in this Court on June 30, 1981; the trial court signed findings of fact and conclusions of law on September 24, 1981, which were included in a supplemental transcript filed on December 1, 1981.

In *Waldrop v. Manning*, 507 S.W.2d 626 (Tex.Civ.App.—Texarkana 1973) *writ ref'd n.r.e. per curiam sub nom. Manning v. King*, 514 S.W.2d 899 (Tex.1974), the court held it

to be reversible error for the trial court to file findings of fact and conclusions of law *after* the transcript has been filed in the appellate court, so as to prevent the appellant from requesting additional or amended findings pursuant to Rule 298, T.R.C.P. *Id.* at 629.

The Supreme Court disapproved this holding because "[n]one of the parties complained of the trial court's action with respect to the findings of fact and conclusions of law, and there was no point before the Court of Civil Appeals on this phase of the case." *Manning v. King*, 514 S.W.2d 899 (Tex.1974). In the instant case, however, the appellant has complained of the trial court's action and there is a point of error on this phase of the case.

We hold that the trial court was in error by waiting until after the transcript was filed in this Court to make its findings of fact and conclusions of law. Such action effectively deprived the appellant of his right, under Rule 298, to request additional or amended findings and conclusions. *See Wade v. Anderson*, 602 S.W.2d 347, 348 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.); *Waldrop v. Manning, supra*. We disapprove of the filing of findings of fact and conclusions of law *after* the transcript has been filed in the Court of Appeals. When a timely demand has been made for findings, the trial court *must* file them within the time limits provided in Rule 297, T.R.C.P. In the instant case, however, this error may still be corrected by the trial court and therefore cannot be the basis for a reversal. Rule 434, T.R.C.P.

In *McShan v. Pitts*, 538 S.W.2d 266 (Tex. Civ.App.—San Antonio 1976, no writ), the court was confronted with a situation similar to that of the instant case. The court, rather than reversing, held:

"We conclude that instead of reversing the judgment, the proper order is one directing the trial court to file its findings of fact and conclusions of law so as to give appellant the opportunity to request further, additional, or amended findings in accordance with Rule 298. Tex.R.Civ.P. The trial court is directed

to file his original findings of fact and conclusions of law no later than July 1, 1976. Appellant will then have five days to request further, additional, or amended findings. After final action on such findings of fact and conclusions of law, same shall be filed in our Court by supplemental transcript. The time for filing appellant's brief shall begin to run at the time such supplemental transcript is filed." *Id.* at 266.

Even though the appellant has been effectively denied his rights to obtain rulings on his objections to the findings and conclusions and to request additional findings, justice does not demand that we direct the trial court to correct its procedural errors, as permitted by Rule 434, T.R.C.P. There are other errors which require a reversal and remand. *See In Re R. L.*, 620 S.W.2d 249, 251 (Tex.Civ.App.—Amarillo 1981, no writ); *Waldrop v. Manning, supra* at 629–630.

The appellant further contends that the trial court erred in finding that the note signed by him was not delivered to the partnership of W. L. Bates and Elbert Cox for the specific purpose of furnishing collateral for a loan previously incurred by W. L. Bates and Elbert Cox. The appellant also contends that the trial court erred in concluding that there "was no delivery for a special purpose of the note in question." Both the "finding" and the "conclusion" are attacked on the grounds that "the evidence is conclusively to the contrary" and, alternatively, that they "are against the great weight and preponderance of the evidence." In essence, the appellant presents "no evidence" and "against the great weight and preponderance of the evidence" complaints. In disposing of them, we follow the well established rules laid down in *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965) and in *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

In 1973, Herman F. Waters, Jr., and S. Gary Roberts sold a tract of land in Bexar County, known as Camino Real, to Elbert S. Cox and W. L. Bates, Trustees. Shortly thereafter, the Trustees conveyed this prop-

erty to their sons, Paul Cox and Dan Bates, payees of the note involved in this case. Paul and Dan took the property subject to a promissory note in the amount of $839,-731.00, executed by their fathers and payable to Roberts and Waters. This note bore interest at the rate of seven and one-half percent per year, payable annually in advance. The principal sum was not due until the year 1996. Thus, to keep the property, Dan and Paul were required to make annual interest payments of approximately $75,-000.00.

In order to make the interest payments for 1973 and 1974, Dan and Paul borrowed a total of $150,000.00 from a Corpus Christi bank. The bank required Elbert Cox and W. L. Bates to guarantee these loans. In 1975, to enable them to pay the subsequent interest payments, Dan and Paul, with the aid of their fathers, formed a joint venture. To raise money, 10% shares in the joint venture were sold to various persons, including the appellant.

The joint venturers, including the appellant, each initially paid in $8,000.00, for a total of $80,000.00, which was used to pay the 1975 interest payment and other expenses. In 1976, each joint venturer again paid in $8,000.00 to pay that year's interest payment. In 1977, the joint venturers failed to pay that year's interest payment when due. As a result, Roberts and Waters foreclosed their lien on Camino Real and the joint venture failed.

The appellant is a farmer and a rancher. He became a joint venturer in 1975 upon the suggestion of his long-time friend W. L. Bates. Neither Elbert Cox nor Paul Cox ever discussed the joint venture with the appellant. The appellant testified that he paid at least $16,000.00 to the joint venture. The note in question was executed by the appellant on June 26, 1975 and was payable, according to its terms, on or before June 15, 1976.

In our original opinion in this case we summarized the pertinent testimony presented at the trial. In his motion for rehearing, the appellee's attorney contended that this Court misread and misstated

that testimony. To avoid further confusion of the appellee's attorney, we quote, rather than summarize, the pertinent testimony.

In regard to the execution of the note, the appellant testified as follows:

"Q Who asked you to sign that note?

A Mr. Bates, Mr. W. L. Bates.

Q Do you recall where you were, or under what circumstances that he asked you to sign that note?

A I do not remember exactly where we were when I signed the note. I signed the note. Mr. Bates told me that I would never be held personally liable for that note.

MR. KIM COX: Excuse me, Your Honor, is it stipulated that we have a running objection?

THE COURT: Yes, sir.

Q (By Mr. Cunningham) What representation did Mr. Bates make to you as a condition for signing the note?

A That they would possibly use it as collateral to get more money. As I understood this project, it was sorely undercapitalized. They wanted to put in some roads, streets, and all of this sort of thing, and they though it would be a good deal, and eventually—if we could hang in there. And like I said, you know, I went in on that basis. But he told me that I would not be held liable for this note here.

Q All right, did he tell you the purpose that he asked you to sign the note? What limited use of the note would be?

A For collateral if they used it, you know, at the bank."

W. L. Bates testified as follows:

Q (By Mr. Cunningham) The execution of that note was handled between you and Mr. Labar?

A Yes, sir.

* * * * * *

Q (By Mr. Cunningham) All right, what purpose did you explain to him that the notes would be used for?

A That I told him—I am almost positive this is what it was—that we were going to try to get the bank to accept the notes so that we could retrieve the money that we had advanced in the deal.

Q All right, was there any other purpose for the notes?

A No. I don't believe that this is the exact sum that was the exact sum at the bank. But it was to recoup the monies that we had advanced on the deal, both at the bank and if there were others of us.

Q All right, did you in fact ever use the notes as collateral or to collateralize that note?

A No, sir.

Q Sir?

A No, sir. We tried to at the bank, and they would not accept it."

Dan Bates, one of the two payees named in the note in question, who, as already noted, refused to join Paul Cox as a plaintiff and was brought in as an involuntary plaintiff, testified as follows:

"Q It has been established that you are named as a joint payee in a promissory note, dated June 26th, 1975. Do you recognize that note?

A Yes, sir.

Q Are you one of the named payees there?

A Yes, sir.

Q Do you claim any interest in that note, or did anybody owe you any money under that note?

A No, sir.

Q Why not?

A Well, the way we structured the thing at first was—

Q When you say the thing, you mean the joint venture?

A Yes, sir, and the notes and everything. We got Labar and several other people to come in on the joint venture with us on the Camino Real deal to try to borrow some more money, or to cover a note that was at the Bank and Trust, and we were going to use these notes as collateral at the bank, and if the deal flew, then we would pay—you know, get our money back out of the notes. And the deal did not fly.

Q  All right, were the notes ever used as collateral?

A  No, sir, they were not.

\*  \*  \*  \*  \*  \*

Q  All right, what uses were to be made of the notes, if you know?

A  What uses were to be made of the notes? It was my understanding that there was to be—as far as I can remember, there was a large note at the Bank and Trust.

Q  I am talking about this particular note that was signed by Mr. Labar.

A  What use was it for? Well, this and the other ones combined was to try to use them as collateral at the bank.

Q  All right, were they ever used at the bank as collateral?

A  No.

Q  All right, were they ever used at the bank as collateral?

A  No.

Q  Were any other uses, as far as you know, to be made of those notes?

A  No, sir."

The appellee's testimony concerning the execution of the note is as follows:

"Q  Did you ever meet George Labar in your life?

A  No, sir, I don't believe so.

Q  Never saw him?

A  I don't believe so.

Q  Never entered into any transaction whatsoever with George Labar with regard to any matter, did you?

A  Not that I can remember.

Q  And you never got with George Labar or Mr. Labar and said, 'If you will sign this note, I will give you something'?

A  No, sir; no, sir.

Q  He never came to you and said, 'I will sign this note if you will give me something'?

A  No.

\*  \*  \*  \*  \*  \*

Q  You had no relationship or no privy, or you were not involved at any time in any negotiations or any of the activities concerning the execution of this note?

A  No, sir."

Elbert Cox and W. L. Bates attempted to use the appellant's note, along with other notes, as collateral. The bank, however, would not accept the notes as collateral because the makers were unknown to the bank. It is conclusively established by the evidence that the note in question was never used as collateral. Thereafter, the note remained in the offices of Elbert Cox and W. L. Bates for over five years.

The appellee testified that the appellant's note was not delivered to him until just before this lawsuit was filed. He also testified that he never attempted to obtain payment on the note prior to the filing of this action.

As stated earlier in this opinion, one of the appellant's defenses was that the note was delivered for a special purpose, which never occurred. *See* Tex.Bus. & Comm. Code Ann. § 3.306(3) (Tex.U.C.C.) (Vernon 1968). That purpose, according to the appellant's position, was to collateralize a bank loan. The appellee argues that parol evidence is not admissible to show that the note was delivered for a special purpose.

■■ Evidence of a parol condition affecting the *payment* of a note, which operates to add to, take from, or vary the terms of the note, is not admissible. *Kuper v. Schmidt*, 161 Tex. 189, 338 S.W.2d 948, 952 (1960). On the other hand, and contrary to the appellee's position, parol evidence *is admissible* in a suit between the original parties to show that a note was delivered for a special purpose; such evidence is of a condition affecting the *delivery* of the note, rather than its payment. *Kuper v. Schmidt, supra,* 338 S.W.2d at 952; *Nawas v. Holmes,* 541 S.W.2d 283, 285 (Tex.Civ.App. —Waco 1976, no writ); *McPherson v. Long- view United Pentacostal Church,* 540 S.W.2d 424, 431 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.); *Texas Export Develop- ment Corp. v. Schleder,* 519 S.W.2d 134, 137 (Tex.Civ.App.—Dallas 1974, no writ); *Cice- ro Smith Lumber Co. v. Gaston,* 447 S.W.2d 736, 738 (Tex.Civ.App.—Amarillo 1969, writ

ref'd n.r.e.); *Shepherd v. Erickson,* 416 S.W.2d 450, 452 (Tex.Civ.App.—Houston 1967, writ ref'd n.r.e.).

In the instant case, the maker of the note and one of its joint payees testified that the note was to be used only as collateral. W. L. Bates, who represented Dan Bates and Paul Cox during the discussion of the joint venture with the appellant, testified that he told the appellant that the purpose for the note was to collateralize an existing bank note. Although Paul Cox and Elbert Cox testified that they had no knowledge of a special purpose for which the note was delivered, they also testified that they were not privy to the negotiations between the appellant and W. L. Bates.

The appellee says that his father, Elbert Cox, and W. L. Bates intended for the *proceeds* of the note in question to be used to reimburse them for funds they had advanced their sons, Paul and Dan. We find this argument unpersuasive. If the bank had accepted the note as collateral, the special purpose for which it was delivered would have been realized and the note would have been payable according to its terms assuming, of course, no other valid defenses existed. In such case, the payees of the note would have been free to dispose of the proceeds of the note as they desired. As it happened, however, the special purpose for which the note was delivered failed, rendering the note unenforceable. *Nawas v. Holmes,* 541 S.W.2d 283, 285 (Tex. Civ.App.—Waco 1976, no writ).

We hold that there was no evidence to support the trial court's finding that the note in question was not delivered for the specific purpose of collateralizing the note previously executed by W. L. Bates and Elbert Cox, and that there is no evidence to support the trial court's conclusion that the note upon which this suit is based was not delivered for a special purpose. However, assuming, arguendo, that there is some evidence which does support such finding and conclusion, after reviewing and weighing all of the evidence, we further hold that the finding and conclusion that the note in question was not delivered for a special purpose is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust.

Even though we agree that there is no evidence to support either the "finding" or "conclusion," above-mentioned, we do not reverse the judgment of the trial court and render judgment that the appellee take nothing because the appellant, in his brief, does not ask for a reversal and rendition. He prays only for a reversal and remand. Accordingly, the judgment of the trial court is reversed and the cause is remanded for a new trial.

REVERSED and REMANDED.