Sherry BROOKS, Appellant,

v.

HOUSING AUTHORITY OF the CITY OF EL PASO, Appellee.

No. 08–95–00096–CV.

Court of Appeals of Texas, El Paso.

Feb. 29, 1996.

Rehearing Overruled May 14, 1996.

Joel A. Madrigal, El Paso Legal Assistance Society, El Paso, for Appellant.

Michael C. Crowley, El Paso, Edward Dunbar, Dunbar & Barill, El Paso, for Appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from a forcible detainer action, tried de novo by non-jury trial in the county court at law. Judgment was entered in favor of Appellee, the owner of the premises. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

Appellant is a lessee of an apartment owned by Appellee. The lease provides that only the lessee and specifically named family

members are to reside in the apartment.[1] On May 24, 1994, Appellee filed a forcible detainer action in justice court against Appellant, alleging that Appellant was permitting Greg Haley, the father of her three children, to live with her in violation of the lease. After judgment was entered in favor of Appellee, de novo appeal was pursued in the county court at law. The county court at law also held in favor of Appellee, finding that "Greg Haley has lived with Sherry Brooks at her Housing Authority apartment."

Prior to the forcible detainer action, Mr. Haley had been the subject of private security company log reports and police incident reports commencing on January 1, 1993, and ending on March 17, 1994. Regarding his "living" with Appellant, the trial court made the following findings of fact:

12. On January 1, 1993, Greg Haley was involved in a family violence incident with Sherry Brooks in her apartment.

13. On March 28, 1993, at 11:00 p.m., Sherry Brooks and Greg Haley were involved in a disturbance at Sherry Brooks' apartment. The police were called to this disturbance.

14. On March 29, 1993, Greg Haley was involved in a shouting incident at 2:00 in the morning at Sherry Brooks' apartment.

15. On May 3, 1993, at 9:00 in the evening, Greg Haley asked the Housing Authority security guard if he could park his car next to "his front door" because he had a broken window on his car.

16. On May 14, 1993, the security guard advised Greg Haley not to wash his car at the complex anymore since it was a violation of complex rules.

17. On June 18, 1993, Greg Haley was seen at Sherry Brooks' apartment at 4:00 in the morning.

18. On June 6, 1993, Sherry Brooks called the apartment security to complain that she was having problems with Greg Haley and asked for help in getting him to leave the apartment.

19. On June 19 and 20, 1993, Greg Haley's vehicle was parked in the Housing Authority parking lot and he was seen at Sherry Brooks' apartment.

20. On June 24, 1993, Greg Haley's vehicle was again seen in the parking lot.

21. On June 25, 1993, Greg Haley was with Sherry Brooks in front of her apartment.

22. The security guards noted on June 26, 1993, that Greg Haley was still staying at Sherry Brooks' apartment and getting visitors late at night and early in the morning.

23. On June 28, 1993, Greg Haley was still at Sherry Brooks' apartment.

24. On July 4, 1993, at 2:00 in the morning, Greg Haley was talking to an individual at the Housing Authority parking lot.

25. On July 6, 1993, Greg Haley's vehicle was parked in the Housing Authority parking lot.

26. On April 28, 1993, the security guards notice a strong smell of marijuana coming from Sherry Brooks' apartment.

27. On September 3, 1992, Greg Haley was investigated concerning a family fight and was arrested by the El Paso Police Department for a probation violation. He gave his address as Sherry Brooks' apartment.

28. On November 27, 1993, Greg Haley was arrested very close to the Housing Authority by the El Paso Police Department for the offense of theft of service (not paying a taxi driver). At that time Greg Haley gave the address of Sherry Brooks as his address.

29. On March 17, 1994 at approximately 1:00 in the morning, Greg Haley filed a complaint with the El Paso Police Department about shots fired at him. This incident took place in the block next to the block where Sherry Brooks' apartment is and Greg Haley gave Sherry Brooks' apartment as his address.

30. Sandra Torres, who was the manager at the Housing Authority complex for

---

1. The lease provides that lessee "agrees that no other person shall live in the apartment without permission of EPHA and that violation of this agreement shall be considered a serious violation and grounds for termination of this lease."

three and a half years, saw Greg Haley around on numerous occasions. On June 4, 1993, Sandra Torres counseled Sherry Brooks about having Greg Haley live with her and also about his activities on or near the Housing Authority premises.

## II. DISCUSSION

■ Appellant attacks the judgment of the trial court in ten points of error. In her first, second, and third points of error, Appellant avers that the trial court erred in failing to prepare findings of fact and conclusions of law. We find any error to be remedied.

After the trial court rendered judgment in favor of Appellee, Appellant timely filed her request for findings of fact and conclusions of law. A second request noting the failure to comply with the original request was also timely filed pursuant to TEX.R.CIV.P. 297. The trial court, however, did not respond.[2] On Appellee's motion, we abated the appeal for thirty days and directed the filing of findings of fact and conclusions of law. Thereafter, the requisite findings and conclusions were duly made, and now are before us in the supplemental transcript.

Much confusion exists over the effect of a trial court's failure to file initial findings of fact and conclusions of law after timely request and reminder. Appellate courts have espoused two quite different solutions to the problem: reverse and remand for new trial or stay proceedings and order the trial judge to file findings and conclusions. These dissimilar resolutions arise from competing rules within the Texas Rules of Civil Procedure and the Texas Rules of Appellate Procedure. See Ann C. McClure, Making the Non–Jury Trial More "Appealing", in STATE BAR OF TEXAS PROF.DEV.PROGRAM, ADVANCED CIVIL APPELLATE PRACTICE COURSE J, J–22 (1994).

TEX.R.CIV.P. 296 provides that in any case tried in the district or county court without a jury, the judge shall, at the request of any party, state in writing findings of fact and conclusions of law. This rule is derived from former TEX.REV.CIV.STAT.ANN. art. 2208,[3] which contained similar language. The former statute provided that the failure to file requested findings of fact and conclusions of law was reversible error.

TEX.R.APP.P. 81(a), stemming directly from former TEX.R.CIV.P. 434, provides as follows:

> If the erroneous action or failure or refusal of the trial judge to act shall prevent the proper presentation of a cause to the court of appeals, and be such as may be corrected by the judge of the trial court, then the judgment shall not be reversed for such error, but the appellate court shall direct the said judge to correct the error, and thereafter the court of appeals shall proceed as if such erroneous action or failure to act had not occurred.

Rule 434 emanated from Rule 62a, which provided for error correction if the trial judge's action prevented proper presentation of an appeal. The purpose of Rule 62a "was to prevent the reversal of trial court judgments for technical and unsubstantiated errors, and to cast the burden of showing prejudice upon the party complaining of the erroneous ruling, so far, at least, as it was within his power to do so." *Golden v. Odiorne*, 112 Tex. 544, 249 S.W. 822, 823 (1923). As such, TEX.R.CIV.P. 296, interpreted to require reversal, and TEX.R.APP.P. 81(a), providing for abatement, have endured for many years.

In *Wagner v. Riske*, 142 Tex. 337, 178 S.W.2d 117 (1944), the Supreme Court considered the effect of a trial court's failure to file findings and conclusions after proper requests. The Court noted that because TEX.R.CIV.P. 296 is in the same language as Article 2208, it should be given the same construction and held to accord the same rights. *Id.*, 178 S.W.2d at 119. For this reason, the Court found that the failure of the trial court to make requested findings and conclusions was reversible error unless the record affirmatively showed that the complaining party

---

2. In any case tried without a jury in the district or county court, the judge shall, at the request of either party, state in writing findings of fact and conclusions of law. TEX.R.CIV.P. 296.

3. *Repealed by* Act of May 15, 1939, ch. 25, § 1, 1939 Tex.Gen.Laws 201 (adopting the Texas Rules of Civil Procedure).

had suffered no injury. *Id.* at 119–20. The *Wagner* decision has spawned a line of precedent and the rule has been carried forward, to one extent or another, ever since. *See, e.g., Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768 (Tex.1989); *Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254 (Tex.1984); *Joseph v. Joseph,* 731 S.W.2d 597 (Tex.App.—Houston [14th Dist.] 1987, no writ).

The impetus toward abatement as an appropriate solution stemmed from 4 ROY W. MCDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 16.08.1 (rev. 1984). McDonald disagreed with the supposition in the *Wagner* line of precedent that a statute adopted as a rule of procedure continues to carry its former interpretations. He contended that other rule changes must be considered before the premise can be applied. Upon weighing such rule changes, he concluded as follows:

> Interpreting the rules as a whole and giving effect to their general aim of limiting reversals to cases wherein there is prejudicial error, it is proper for the court of appeals, in a cause in which the trial judge has erroneously failed to make findings, either (i) to overrule the point of error based upon the trial judge's failure, if from the record it is clear that no prejudice resulted; or (ii), if the error is not shown to be harmless, to order the trial judge to file findings of fact and conclusions of law, together with such supplemental and additional findings as may be requested by either party and granted by the court, and to certify these to the appellate court.

*Id.* Thereafter, the pendulum began to swing in the direction of abatement as more courts relied on the provisions in Rule 434 and McDonald's contentions. *See, e.g., Avila v. State,* 856 S.W.2d 260, 262 (Tex.App.—El Paso 1993, pet. ref'd); *Rothwell v. Rothwell,* 775 S.W.2d 888, 890 (Tex.App.—El Paso 1989, no writ); *Wallen v. State,* 667 S.W.2d 621, 624 (Tex.App.—Austin 1984, no writ); *Carr v. Hubbard,* 664 S.W.2d 151, 153–54 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *White v. Pope,* 664 S.W.2d 105, 107 (Tex.App.—Corpus Christi 1983, no writ); *Labar v. Cox,* 635 S.W.2d 801, 803 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); *Rose v. Rose,* 598 S.W.2d 889, 892 (Tex.Civ.App.—Dallas 1980, writ dism'd); *Fine v. Scott,* 592 S.W.2d 56, 58 (Tex.Civ. App.—Eastland 1979, writ ref'd n.r.e.); *Layton v. Layton,* 538 S.W.2d 642, 643 (Tex.Civ. App.—San Antonio 1976, writ ref'd n.r.e.).

However, in *Joseph v. Joseph,* 731 S.W.2d 597 (Tex.App.—Houston [14th Dist.] 1987, no writ), the Fourteenth Court of Appeals surveyed the history of the respective rules and disagreed with McDonald's interpretation that the rule adoption did not carry previous statutory interpretations. Although the court recognized the problem of judicial delay, the court chose to reverse and remand the case for new trial "[b]ecause no relevant rules have changed since the interpretative opinions on the effect of the failing to file findings of fact and conclusions of law and because the Supreme Court has not opted to announce a new interpretation." *Id.* at 600. Judicial economists have questioned this decision, contending that reversal unduly burdens the litigants with additional fees, impedes already crowded civil dockets, and causes unjust judicial delay.

One year after this decision, the Fourteenth Court of Appeals revisited the issue in *Barnes v. Coffman,* 753 S.W.2d 823 (Tex. App.—Houston [14th Dist.] 1988, writ denied), finding that *Joseph* was dispositive of the case. On January 25, 1989, the Supreme Court denied the application for writ of error and allowed the Fourteenth Court's reversal and remand to stand. Interestingly, on the same day, the Court issued its opinion in *Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768 (Tex.1989), finding that "[b]ecause the trial court's duty to file findings and conclusions is mandatory, the failure to respond when all requests have been properly made is presumed harmful, unless 'the record before appellate court affirmatively shows that the complaining party has suffered no injury.'" *Id.* at 772 (quoting *Wagner,* 178 S.W.2d at 120). However, in determining that abatement was a proper remedy, the Court opined as follows:

> Because the trial judge continues to serve on the district court, we believe the error in this case is remediable. We

therefore reverse the judgment of the court of appeals and remand to that court, with instructions for it to direct the trial court to correct its error pursuant to Tex. R.App.P. 81(a).

*Cherne Industries, Inc.,* 763 S.W.2d at 773. Thus, it appears that the reversal versus abatement debate has come full circle.

■ After reviewing the relevant authorities on the subject, we hold as follows: whenever possible, appellate courts should attempt to remedy the absence of findings and conclusions by abating the appeal and remanding to the trial judge for entry of findings and conclusions, so that the appeal can be handled in a normal manner. If the trial court cannot forward findings and conclusions to the court of appeals due to loss of the record, problems with memory, passage of time, or other inescapable difficulties, reversal and remand for a new trial is a proper remedy. This solution should avoid unnecessary judicial delay while protecting the rights of the litigants to pursue meaningful review of the trial court judgment. Finding that abatement was the proper remedy in the instant case, we overrule Appellant's Points of Error Nos. One, Two, and Three.

In her fourth and sixth points of error, Appellant contends that the trial court erred "in allowing plaintiff's exhibits 5 through 17, 24 and 28 to be admitted because the exhibits are hearsay" and "do not qualify as business records of the El Paso Housing Authority."

■ We may reverse a judgment based upon admission or exclusion of evidence only where: (1) the trial court did err; and (2) the error was reasonably calculated to cause and did cause rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989); *Durbin v. Dal–Briar Corp.,* 871 S.W.2d 263, 267 (Tex.App.—El Paso 1994, writ denied); *LaCoure v. LaCoure,* 820 S.W.2d 228, 235 (Tex.App.—El Paso 1991, writ denied); *see* Tex.R.App.P. 81(b)(1). A complaining party need not prove, however, that "but for" the exclusion of evidence, a different judgment would necessarily result; rather, it is enough to show that an improper verdict probably resulted. *McCraw v. Maris,* 828 S.W.2d 756, 758 (Tex. 1992); *Durbin,* 871 S.W.2d at 267; *Castro v.*

*Sebesta,* 808 S.W.2d 189, 192 (Tex.App.—Houston [1st Dist.] 1991, no writ).

■ Rule 803(6) of the Texas Rules of Civil Evidence pertains to admission of business records and provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular (sic) organized activity whether conducted for profit or not.

Tex.R.Civ.Evid. 803(6). Though hearsay evidence is generally not admissible, records of regularly conducted activities are an exception to the general rule. The predicate for admissibility under the business records exception is established if the party offering the evidence establishes that the records were generated pursuant to a course of regularly conducted business activity and that the records were created by or from information transmitted by a person with knowledge, at or near the time of the event. *GT & MC, Inc. v. Texas City Refining, Inc.,* 822 S.W.2d 252, 257 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Clark v. Walker–Kurth Lumber Co.,* 689 S.W.2d 275, 281 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

■ In the instant case, Jack Marshall, a lease enforcement investigator technician with the El Paso Housing Authority, testified as follows regarding Plaintiff's Exhibits 5 through 17, the Texas Security Guard Service reports:

> Q. Mr. Marshall, are those reports prepared for the Housing Authority by its contractual agent, Texas Security Guard Service, on a regular basis?

**A.** It's a requirement that reports be turned in at the end of each shift.

**Q.** So the answer is yes?

**A.** Yes, sir.

**Q.** Is it normal and customary for them to prepare these for the Housing Authority?

**A.** Yes, sir.

**Q.** Are these prepared based on information provided by a person with firsthand knowledge or received from a person with firsthand knowledge?

**A.** Yes, sir.

**Q.** Is it the policy of the Housing Authority to keep these as a regular part of its operations?

**A.** Yes, sir.

**Q.** As such, are they kept in your file while you have custody of it, or in the file of the manager; the manager has custody of it?

**A.** Yes, sir.

Similar predicates were established for Plaintiff's Exhibits 24 and 28, which were also Texas Security Guard Service reports.[4] As such, we find no error in the trial court's admission of these exhibits. Accordingly, we overrule Appellant's Points of Error Nos. Four and Six.

■ Although unsupported by case law and consisting of only five sentences, we believe Appellant, in Point of Error No. Five, complains that the Texas Security Guard Service reports, as business records, were not authenticated because they "were not backed by Affidavits as per Rule of Evidence 902(10)." We disagree, as business records may be introduced without an affidavit. *See Chemical Bank v. Commercial Indus. Serv. Co.,* 668 S.W.2d 336, 337 (Tex.1984).

■ The business record exhibits of which Appellant complains were introduced through Jack Marshall, a Housing Authority employee. Marshall testified that neither he nor the apartment manager was custodian of the reports. In introducing business records, a party may proffer an affidavit from the custodian of records or call the custodian or other qualified person to testify in person concerning the business records. *Chemical Bank,* 668 S.W.2d at 337. Because Marshall testified in person concerning the exhibits, an affidavit was not necessary. Accordingly, we overrule Appellant's Point of Error No. Five.

■ In her seventh point of error, Appellant contends that the trial court erred in not allowing a hearing on special exceptions prior to trial because Appellee did not substantially amend its pleadings in its second amended petition. We disagree.

The record reflects that Appellant failed to ask for a hearing on her special exceptions:

(Appellant's counsel): Your Honor, if I may, are you denying all of the special exceptions, or are you denying a hearing on the special exceptions, or what is it that you're—

The Court: Well, I'm denying your motion that you just filed with me about 15 minutes ago on the special exceptions that were part of your first amended answer. *I am not hearing those because you did not ask for a hearing on those as ordered by the Court.* (Emphasis added).

Appellant had the burden to obtain a timely hearing to present her special exceptions to the trial court and obtain a ruling. Her failure to do so waived any error. *McAllister v. Samuels,* 857 S.W.2d 768, 773 (Tex. App.—Houston [14th Dist.] 1993, no writ); *R.I.O. Sys., Inc. v. Union Carbide Corp.,* 780 S.W.2d 489, 491 (Tex.App.—Corpus Christi 1989, writ denied). Accordingly, we overrule Appellant's Point of Error No. Seven.

■ In her ninth point of error, Appellant attacks the legal sufficiency of the evidence to support the trial court's finding that "Sherry Brooks is guilty of forcible detainer and in breach of the lease agreement." We find sufficient evidence to support this determination.

■ Findings of fact entered in a case tried to the court are of the same force and

---

4. For Exhibits 24 and 28, the "at or near the time of the event" component of the proper predicate was not established by Appellee. Assuming without finding the trial court erred in admitting the exhibits, we find that any error was not reasonably calculated to cause rendition of an improper judgment.

dignity as a jury's verdict. *Alamo Bank of Texas v. Palacios,* 804 S.W.2d 291, 295 (Tex. App.—Corpus Christi 1991, no writ); *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them. *First Nat'l Bank of Dallas v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). They are reviewable by the same standards as are applied in reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a special issue. *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

 In considering a "no evidence" legal insufficiency point, we consider only the evidence that tends to support the court's findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Texas Tech Univ. Health Sciences Ctr. v. Apodaca,* 876 S.W.2d 402 (Tex.App.—El Paso 1994, writ denied). If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails. *Tseo v. Midland Am. Bank,* 893 S.W.2d 23, 25 (Tex.App.—El Paso 1994, writ denied); *Hallmark v. Hand,* 885 S.W.2d 471, 474 (Tex.App.—El Paso 1994, writ denied).

The record indicates that Greg Haley was seen at or near Sherry Brooks' apartment on numerous occasions. On January 1, March 28, and March 29, 1993, various disturbances, including a family violence incident, were reported between Sherry Brooks and Greg Haley at Sherry Brooks' apartment. On September 3, 1992, November 27, 1993, and March 17, 1994, Greg Haley gave Sherry Brooks' apartment as his address to the police. Finally, Sandra Torres, the apartment manager, testified that she saw Greg Haley around the complex "[p]ractically every day." We find more than a scintilla of evidence to support the trial court's finding that Greg Haley has lived with Sherry Brooks at her Housing Authority apartment. Accordingly, we overrule Appellant's Point of Error No. Nine.

In her eighth and tenth points of error, Appellant avers that the trial court erred "in its judgment that Sherry Brooks is guilty of forcible detainer and is in breach of the lease agreement because it lacks the support of factually sufficient evidence." Appellant also contends that she had the right to have guests at her apartment.

However, Appellant has failed to cite any authority to support her assertions. Failure to cite authority in support of a point of error on appeal waives the complaint. *Romero v. Parkhill, Smith & Cooper, Inc.,* 881 S.W.2d 522, 529 (Tex.App.—El Paso 1994, writ denied); *Luker v. Arnold,* 843 S.W.2d 108, 120 (Tex.App.—Fort Worth 1992, no writ); *Malouf v. Dallas Athletic Country Club,* 837 S.W.2d 674, 678 (Tex.App.—Dallas 1992, writ dism'd w.o.j.); *see* TEX.R.APP.P. 74(f). The point is not properly before the Court. Accordingly, we overrule Appellant's Points of Error Nos. Eight and Ten.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.