

**NUMBER 13-14-00058-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MERCEDES GARZA PAREDES,**                                    **Appellant,**

**v.**

**SERGIO GARZA AND JANAHI CRUZ,**                              **Appellees.**

---

On appeal from the 93rd District Court
of Hidalgo County, Texas.

---

# ORDER OF ABATEMENT

**Before Justices Rodriguez, Benavides, and Perkes**
**Order Per Curiam**

Appellant Mercedes Garza Paredes brought suit against appellees Sergio Garza and Janahi Cruz "for [r]ecission of [f]raudulent [t]ransfer of [c]ommunity [p]roperty and [p]ost-[d]ivorce [d]ivision of [p]roperty." After a bench trial, the trial court rendered judgment against Paredes. She appeals this judgment by two issues. By her second issue, Paredes contends that the trial court erred when it failed to file findings of fact and

conclusions of law after she requested it to do so pursuant to Texas Rules of Civil Procedure 296 and 297. *See* TEX. R. CIV. P. 296 , 297. We abate and remand this matter to the trial court.

## I. BACKGROUND

The underlying events concern the June 23, 2010 divorce of Paredes and Garza and property that Paredes asserts was not divided or awarded to either party in the final decree of divorce. In her December 30, 2010 original petition, Paredes complained of Garza's allegedly fraudulent transfer of community funds from his retirement account. Paredes asserted that she had no knowledge of the transfer. She claimed that Garza used these funds to purchase a house located at 5104 N. 38th Street in McAllen, Texas, and a 2008 Chrysler automobile, both in Cruz's name. As to the allegedly fraudulent transfer, Paredes asserted that Cruz knew of the impending divorce and that she had notice of Paredes's interest in the community property. Paredes sought a declaration from the trial court that the transfer of community funds was void. She also requested that the trial court set aside the transfers and cancel the deed to the house and lot and the certificate of title to the vehicle. Paredes further sought the division of this previously undivided property. Garza filed no responsive pleadings. Cruz filed a pro se answer generally denying all claims. On January 12, 2011, the trial court issued temporary orders enjoining Cruz from disposing of, selling, removing, encumbering, transferring, and harming the real and personal property at issue in this case.

On September 6, 2011, the trial court held a bench trial on this matter. Paredes and Cruz were represented by their respective counsel and Garza appeared pro se. All

parties testified. In her appellate brief, Paredes set out the following facts from the

testimony presented at the hearing[1]:

> Appellee Garza . . . stated that the retirement money . . . which was accumulated for the last twenty years was money that accrued during the marriage. There was no contrary evidence presented at trial which indicated that the retirement money of Appellee Garza was [not] community property of Appellant and Appellee Garza.
>
> . . . .
>
> At trial Appellee Garza stated that he transferred during his marriage to Appellant property to Appellee Cruz. Appellee Garza transferred a car and a house to Appellee Cruz that was purchased with money from his retirement account which was community property of Appellant and Appellee Garza. Appellee Garza stated that he did this without Appellant's knowledge or permission.
>
> [T]he General Warranty Deed dated December 2, 2009 [showed that] Grantor Yolanda Garcia deed[ed] on December 3, 2009 [a]ll of Lot 106, BROOKWOOD SUBDIVISION UNIT 1, an Addition to the City of McAllen, Hidalgo County, Texas [to] Appellee Cruz. Appellee Garza stated that Yolanda Garcia was the owner of the real property, and he purchased the real property with two certified checks one for five thousand dollars ($5,000.00) and the other for sixty four thousand dollars ($64,000.00). . . . [T]he 2008 Chrysler 300 with VIN 2C3KA43R38H122015 . . . is registered to Appellee Cruz. . . . The sale price for the vehicle . . . is thirteen thousand four hundred sixty and 32/100 dollars ($13,460.32).
>
> Appellee Garza stated that he purchased the real property with his retirement money that was accumulated during his marriage. Appellee Garza was still married to Appellant when he took the money from his retirement fund and purchased the house for Appellee Cruz. Appellee Garza stated that Appellant had no knowledge that he was withdrawing money from his retirement fund to purchase real and personal property for Appellant Cruz. Appellee Garza stated that he didn't tell Appellant about the withdrawing of money from the retirement fund and purchasing the real and personal property for Appellee Cruz because Appellee Garza did not want Appellant to get the money or the house. Appellee Garza indicated that he bought the house so he could have something after the divorce without his wife, Appellant, knowing about it.

---

[1] We note that appellees did not file briefs to assist us in this matter. And in this civil case, we will accept as true the facts Paredes set out in her statement of facts because no other party contradicted them and because Paredes supported them with record references. *See* TEX. R. APP. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them. The statement must be supported by record references.").

Appellee Garza indicated that Appellee Cruz was his girlfriend. Appellee Garza state[d] that it was not his intent to give Appellee Cruz the house as a gift. The plan was to place it under Appellee Cruz['s] name first and then after the divorce the house was to be placed under his name. The plan was for Appellee Garza and Appellee Cruz to live together and then to get married. Appellee Garza indicated that "things changed" between him and Appellee Cruz because the money started to run out. Appellee Garza stated that he put the property under Appellee Cruz's name to defraud his wife.

Appellee Garza indicated that he bought the 2008 Chrysler 300 on or about April or May in 2009. Appellee Garza state[d] that he paid fifteen thousand dollars ($15,000.00) cash for the vehicle and spent three thousand dollars ($3,000.00) for rims and a chrome kit for the vehicle. Appellee Garza state[d] that the money came from the retirement fund that was community money of his marriage to Appellant.

Appellee Garza indicate[d] that he took out approximately one hundred thousand dollars ($100,000.00) from his retirement fund without Appellant's knowledge. Appellee state[d] that sixty nine thousand dollars ($69,000.00) [was] for the house that is under Appellee Cruz's name. Appellee Garza state[d] that he had the house painted inside and outside [at the] cost of eight hundred dollars ($800.00), tile at [the] cost of approximately one thousand two hundred dollars ($1,200.00), and a new air conditioner and compressor. Appellee Garza state[d] he placed a new sink, new faucet, and he purchased a refrigerator for the house. Appellee Garza state[d] that Appellee Cruz did not contribute any money to the house. Appellee Garza also state[d] the Appellee Cruz did not put any money down on the Chrysler vehicle.

Appellee Garza stated that he talked to Appellee Cruz to transfer the real property and the car back to his name, and that caused Appellee Cruz to kick him out of the house. Appellee Cruz told Appellee Garza that he was not going to get anything back, and that Appellee Cruz already had plans to sell the house. Appellee Garza state[d] that he told Appellee Cruz before he bought the house that he discussed with Appellee Cruz . . . his intent to buy the house and put it under her name and then after the divorce put it in his name.

[The evidence traced] the A.G. Edward Jones account and transfers to the International Bank of Commerce account. Appellee [Garza] demonstrated . . . [how] the funds [were] used to buy the house and the personal property for Appellee Cruz, and that this money was from his retirement from his place of employment. Appellee Garza stated that his Edward Jones account only had money from his retirement from his employment. Appellee Garza stated that Appellee Cruz [knew] that the

4

money to make the purchases to her were [sic] coming from the A.G. Edward's Account. Appellee Garza['s] retirement fund in A.G. Edward Jones would be transferred to his International Bank of Commerce account to make the payments for Appellee Cruz. . . . Appellee Garza stated that Yolanda Garcia placed the house under Appellee Cruz name because he told Yolanda Garcia to do it.

Appellee Garza stated that his retirement was from the Wornick Company in which he received six hundred five thousand dollars ($605,000.00) which was community property. The trial court questioned Appellee Garza during the trial. The trial court stated that [it] had no doubt that Appellee Garza purchase the house from Yolanda Garcia, and the trial court stated that [it] had no doubt that Appellee Garza gave it [to] Janahi Cruz. The trial court asked Appellee Garza why he gave the house to Appellee Cruz, and Appellee Garza stated because he wanted to have it after the divorce under his name. Appellee Garza stated he put it under Appellee Cruz name because he was dating her at the time. The trial court stated that "I don't believe that Ms. Mercedes Garza (Appellant) ought to be the loser from what would have been the community estate."

Appellant stated at trial that she had no knowledge that Appellee Garza bought a house during the marriage or the Chrysler motor vehicle during the marriage. Appellant stated at trial that she was not aware of the money transfers from the A.G. Edward's account to [the] International Bank of Commerce account. Appellant had to clarify at trial that the items purchased for Appellee Cruz were purchased during the marriage and before the divorce.

Appellee Cruz stated that she did have a relationship with Appellee Garza, and that she was given a car, a house, and a few personal things. Appellee Cruz denie[d] that Appellee Garza told her that he was buying her the property to harm or defraud Appellant. Appellee Cruz stated that she did not put any money [toward] the purchase of the real property given to her by Appellee Garza. Appellee Cruz stated that for the 2008 Chrysler 300 she did not put any money down for the purchase. Appellee Cruz stated that Appellee Garza purchased the real and personal property for her as gifts. Appellee Cruz stated that she knew Appellee Garza for a short time before the house was given to her. Appellee Cruz state[d] the "short time" was maybe six, seven, or eight months. Appellee Cruz stated that during this time from of six, seven, or eight months she knew that Appellee Garza was married and that Appellee Garza and Appellant were going through a divorce. Appellee Cruz knew that Appellee Garza was going to court to finalize his divorce. Appellee Cruz stated that Appellee Garza got the money to purchase the house and the car from his retirement. Appellee Cruz state[d] that she earned the house and car because she was the girlfriend of Appellee Garza. Appellee Cruz state[d] that the car and house were just given to her and that she didn't ask for anything. . . . [T]he house

5

was tax appraised at seventy nine thousand dollars ($79,000.00) and . . . Appellee Cruz was putting the house [up] for sale.

After Cruz testified, the trial court commented as follows:

Ms. Cruz . . . the question here is not whether there was a fraud committed, because there was. I'm absolutely positive that Mr. Garza sought to defraud Mrs. Garza. . . . I don't know that there may have been a genuine relationship growing between you and Mr. Garza. Whatever it is, Mr. Garza did convey this to you, and you are the lawful owner but for the fraud.

I can do a number of things. One is that I can do what the lawyers are asking me to do and find it was a fraudulent transfer vis-a-vis Ms. Mercedes Garza, in which case Mr. Garza would have somehow made amends to Mrs. Garza and you'd be out whatever you did to earn, as [counsel] asked you, for the love and affection that this gift was conveyed to you. Or I could find that there was fraud and order this property sold, not as you have it for sale but by the Court, and try to do equity.

. . . . And the other thing is to put the blame where it lies, with Mr. Garza. And your windfall would be to the detriment of Mr. Garza's share of the community estate, not Mrs. Garza, in which case the question does become did whatever you did for this relationship with Mr. Garza amount to the level where you ought have received this as a gift, because I have conflicting testimony. You tell me it was a gift to you, and maybe the love and affection was so great that it warranted such a gift. Mr. Garza tells me that it wasn't a gift but rather a conspiracy between you and him to defraud Mrs. Garza.

What I do know is that Mrs. Garza ought not be on the losing end of whatever it is that occurred between Mr. Garza and yourself. . . .

Okay. Both sides want it all. I understand that. Should the Court consider doing something other than ruling for one or the other, I want you to write me a letter, each side, proposing something either way, recognizing that there are arguments to be made for Ms. Mercedes Garza's position and also for Ms. Cruz's position. It actually does help the Court that Ms. Cruz already has the property up for sale. Probably she's unable to afford the upkeep. I don't know. And then I'll decide. I'll be deciding this case in ten days.

The trial court did not, however, issue a written order until November 18, 2013. On that day, following counsels' arguments and without further testimony, the trial court orally denied Paredes the relief she sought, commenting that she had "Mr. Garza to look to for

6

what he did to you." The trial court's written order, dated November 18, 2013, generally denied Paredes's petition and then specifically ordered the following:

> [T]he Original Petition for Rescission of Fraudulent Transfer of Community Property and Post-Divorce Division of Property is DENIED as to Respondent, JANAHI CRUZ.

> [T]he General Warranty Deed dated December 2, 2009, wherein the Grantor is Yolanda Garcia and the Grantee is Janahi Cruz is VALID and the following property shall remain as Respondent, JANAHI CRUZ' sole and separate property, and Petitioner, SERGIO GARZA and Respondent, MERCEDES D[.] GARZA, are hereby divested of all rights, title, interest and claim in which to such property located at: 5104 N. 38th St. McAllen, Texas

> . . . .

> [T]he following property shall remain Respondent, JANAHI CRUZ' sole and separate property, and Petitioner, MERCEDES D. GARZA and Respondent, SERGIO GARZA, are hereby divested of all rights, title, interest and claim in and to such property: 2008 Chrysler 300 VIN # 2C3KA43R38H122015.

Paredes filed a motion for new trial, which was overruled by operation of law.

Pursuant to Texas Rule of Civil Procedure 296, Paredes filed her timely request for findings of fact and conclusions of law on December 6, 2013. The trial court failed to file findings and conclusions. On January 7, 2014, pursuant to Texas Rule of Civil Procedure 297, Paredes filed her notice of past-due findings of fact and conclusions of law, which was brought to the trial court's attention on January 29, 2014. The trial court did not respond to this second request.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

After a bench trial, a trial court must file written findings of fact and conclusions of law when timely requested by a party. *See* TEX. R. CIV. P. 296, 297; *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989). We presume that the trial court's failure

7

to respond to a timely request is harmful error unless the record affirmatively shows that the complaining party has suffered no harm. *Cherne Indus.*, 763 S.W.2d at 772. An appellant is harmed if there are two or more possible grounds on which the court could have ruled and the appellant is left to guess the basis of the trial court's ruling. *See Liberty Mutual Fire Ins. v. Laca*, 243 S.W.3d 791, 794 (Tex. App.—El Paso 2007, no pet.); *Anzaldua v. Anzaldua*, 742 S.W.2d 782, 783–84 (Tex. App.—Corpus Christi 1988, writ denied). Generally, the proper remedy in that situation is to abate the appeal and direct the trial court to correct its error. *Cherne Indus.*, 763 S.W.2d at 773; *Zieba v. Martin*, 928 S.W.2d 782, 786 (Tex. App.—Houston [14th Dist.] 1996, no pet.).

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Paredes contends that she has been harmed because she has been forced to guess the reason or reasons why the trial court ruled against her. *See Laca*, 243 S.W.3d at 794; *Limbaugh v. Limbaugh*, 71 S.W.3d 1, 7 (Tex. App.—Waco 2002, no pet.); *Anzaldua*, 742 S.W.2d at 783–84. Specifically, Paredes argues that she does not know whether "a fraudulent transfer . . . occurred by Appellee Garza to Appellee Cruz in order to defraud Appellant." Although the trial court awarded the property to Cruz, it made no determination of fraud on the part of any party. And now, Paredes claims that, based on the trial court's statements at trial, she could only assume that the conveyance of the real and personal property to Cruz by Garza was fraudulent. Yet she "does not know whether the fraud committed involved only Appellee Garza or Appellee Cruz or both." Paredes also asserts that she does not know "if the court disagree[d] with the facts alleged by her concerning whether community funds [were] used to pay for the real and personal property; whether the real or personal property was purchased during the marriage or after the marriage; [whether] Appellee Cruz earned the real and personal property[; or

8

whether] the house or motor vehicle [were] properties not divided at the time of the divorce." Paredez contends that she "does not know whether to focus her appellate claims against Appellee Cruz or Appellee Garza or both." She claims that "[t]he trial court further confuse[d] [her] by stating that she should not be the losing party because of the actions of Appellee Garza and Appellee Cruz. The trial court ma[de] a final ruling that completely befuddle[d] [her]."

In sum, Garza testified that he committed fraud against Paredes by taking approximately $100,000 from his retirement fund, placing it in his bank account, and then buying a house and motor vehicle under Cruz's name—all without Paredes's knowledge or permission. Paredes testified similarly. And Cruz was aware that Garza was married when Garza obtained the money and that the money came from Garza's retirement account. Also, at the end of the testimony on September 6, 2011, the trial court concluded that it was "absolutely positive that Mr. Garza sought to defraud Mrs. Garza." The trial court stated that Cruz was "the lawful owner but for the fraud." The trial court recognized conflicting testimony: Cruz saying the real property and the personal property given to her by Garza were gifts; and Garza saying that it was a conspiracy to defraud Paredes. The court said that it could try to do equity by finding fraud and ordering the property sold by the trial court. It stated that Paredes should not be the losing party because of the actions of Cruz and Garza. The statements by the trial court at this September 2011 hearing provide no support for the court's final November 18, 2013 written order, which provided no explanation for granting the property to Cruz and for denying all other requested relief. Instead, after the trial court announced its ruling at the November 18 hearing, it commented, "And, Ms. [Paredes], you know this was Mr. Sergio Garza's doing. I'm signing the Final Order Denying Petitioner's Original Petition for Rescission of

9

Fraudulent Transfer of Community Property and Post-Divorce Division of Property," and "You have Mr. Garza to look to for what he did to you."

After reviewing the record and briefs, we agree with Paredes that, in light of rules 296 and 297, the trial court's failure to make the requested findings of fact and conclusions of law was error and harmful, since the record does not affirmatively show no injury to Paredes. *See Cherne Indus.*, 763 S.W.2d at 771–72. There are two or more possible grounds on which the court could have ruled. *See Laca*, 243 S.W.3d at 794; *Anzaldua*, 742 S.W.2d at 783–84. Paredes has been left to guess the basis for the trial court's ruling.[2] *See Laca*, 243 S.W.3d at 794; *Anzaldua*, 742 S.W.2d at 783–84. We sustain Paredes's second issue.

Although Paredes requests reversal and remand for a new trial upon the sustaining of this issue, the proper remedy in this instance is to abate the appeal and direct the trial court to correct its error so that the appeal can be handled in a normal manner. *See Cherne Indus.*, 763 S.W.2d at 773; *Zieba*, 928 S.W.2d at 786. However, if the trial court cannot forward findings and conclusions to this Court "due to loss of the record, problems with memory, passage of time, or other inescapable difficulties, reversal and remand for a new trial is a proper remedy." *Brooks v. Hous. Auth. of City of El Paso*, 926 S.W.2d 316, 321 (Tex. App.1996). "This solution should avoid unnecessary judicial delay while protecting the rights of the litigants to pursue meaningful review of the trial court judgment." *Id.*

### IV. FINALITY OF JUDGMENT

Unless an interlocutory appeal is authorized by statute, an appeal may only be

---

[2] We do not suggest by this order that the findings of fact and conclusions of law should be limited to those discussed herein.

taken from a final judgment. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001). "[W]hen there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties." *Id.*

The order from which Paredes appeals specifically denied the petition as to Cruz. It concluded that the general warranty deed was valid as to Cruz, and it divested Garza's and Paredes's "rights, title, interest and claim in" the real property at issue. It ordered that the personal property was Cruz's sole and separate property and divested Garza's and Paredes's "rights, title, interest and claim in" it. Although the order continued by generally denying all relief requested and not expressly granted, unlike Paredes's claims against Cruz, the order did not specifically address the claims that Paredes asserted against Garza, including but not limited to her allegations of fraud and her request for a post-divorce division of any previously undivided community property. Under these circumstances, we may abate the appeal to permit clarification by the trial court. *See* TEX. R. APP. P. 27.2, 44.3, 44.4; *Lehmann*, 39 S.W.3d at 206.

## V. CONCLUSION

We ABATE and REMAND this cause to the trial court for the issuance of findings of fact and conclusions of law. Upon remand, the trial court is directed to: (1) immediately cause notice to be given and conduct a hearing regarding findings of fact and conclusions of law; (2) make and file appropriate findings of fact and conclusions of law and cause them to be included in a supplemental clerk's record; (4) cause the hearing to be transcribed and included in a supplemental reporter's record; and (5) have these

11

supplemental records forwarded to the Clerk of this Court within thirty days from the date of this order.

We further ABATE and REMAND the cause to the trial court for clarification of its final order. Upon remand, the trial court shall address whether it intended the November 18, 2013 order to completely dispose of all claims and all parties. The trial court shall cause its findings and recommendations, together with any orders it may enter, to be included in a supplemental clerk's record, and any record of such proceedings shall be included in a supplemental reporter's record. The supplemental clerk's record and supplemental reporter's record, if any, shall be filed with the Clerk of this Court on or before the expiration of thirty days from the date of this order.

If the trial court requires additional time to comply, the trial court should so notify the Clerk of this Court. The appeal will be reinstated upon receipt of the foregoing materials and upon further order of this Court.[3]

IT IS SO ORDERED.

PER CURIAM

Delivered and filed the 17th
day of November, 2014.

---

[3] Deadlines for any necessary supplemental briefing will be determined upon reinstatement of this appeal. *See* TEX. R. APP. P. 38.7 ("A brief may be amended or supplemented whenever justice requires, on whatever terms the court may prescribe.").