AMERICA WEST AIRLINES,
INC., Appellant,

v.

Michael TOPE, Appellee.

No. 08–95–00389–CV.

Court of Appeals of Texas,
El Paso.

Nov. 14, 1996.

Rehearing Overruled Dec. 18, 1996.

Eric J. Senske, Dallas, TX, Stacy R. Oben-haus, Gardere & Wynne, Dallas, TX, Dan Hartsfield, Gardere & Wynne, L.L.P., Dallas, TX, for Appellant.

R. Wayne Pritchard, Brandys Carson & Pritchard, P.C., El Paso, TX, for Appellee.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

LARSEN, Justice

America West Airlines, Inc. appeals from a judgment favoring plaintiff Michael Tope, the airline's former employee, in his suit for discriminatory termination under the Texas Worker's Compensation Act. In seven

points of error, America West claims the evidence was neither legally nor factually sufficient to sustain the jury's finding that Tope was discharged in violation of the Texas Worker's Compensation Act, that the evidence established Tope failed to mitigate damages, and that the jury's award for mental anguish damages was without support in the evidence. In a cross-point, Tope urges that the trial court abused its discretion in excluding the testimony of Sylvian Gibson, a clinical social worker who had counseled Tope following his on-the-job injury and discharge. Subject to a voluntary remittitur of future mental anguish damages, we reverse and remand.

## FACTS

Michael Tope began working for America West Airlines when he was twenty years old. For several years, he worked as a cross-utilized customer service representative ("CSR") in the airline's Lubbock, Honolulu, and El Paso stations. A CSR works as a ticket agent, gate agent, baggage service agent, operations agent, and ramp agent as assigned. In a small field station such as El Paso, most America West employees are cross-trained and cross-utilized CSRs. Tope disliked the customer contact involved with working the ticket counter, gate, and baggage service, so when a ramp position became available in September 1991, he applied for and received that job. Because he was no longer cross utilized, he accepted a pay reduction with the new assignment.

On November 3, 1991, while handling baggage on the ramp, Tope caught his left hand in the belt loader used to unload luggage from an aircraft. He was seriously injured. His co-workers took him to the hospital where Dr. Lawrence Vierra, an orthopedic surgeon, performed a seven and one-half hour surgery on Tope's hand. Almost immediately, he began extensive physical therapy to regain use of his hand, but in late February 1992, Dr. Vierra informed America West

that Tope's injury would still require "at least one to two years for neurologic basic recovery" and that the outlook was "quite guarded" for return to outside ramp work and baggage handling. At that time, Vierra predicted that Tope would be unable to return to any heavy manual occupation, would not be able to expose his hand to cold, and that his eventual level of function would probably be office work.

On April 23, 1992, the El Paso city manager for America West, Staslie Zimmerman,[1] wrote Tope citing Dr. Vierra's prognosis that Tope was unable to perform the duties of a CSR, and that it would require one to two years for his basic recovery. The letter stated:

> Your unavailability leaves the Company no choice but to terminate your employment and this letter is to be considered notice of such action. Until June 1, 1992 you will be permitted to seek other positions within the Company for which you may be qualified and that will allow the restrictions in your physical abilities. I can provide you with openings which are currently available for your consideration. If you are unsuccessful in securing a position within this period the processing of your termination documentation will go forward.

Zimmerman offered to create a non cross-utilized job for Tope as baggage service representative. This job was not time sensitive, did not require rapid keyboard input under pressure, was indoors, and could be structured so it did not require lifting and carrying of luggage. Tope did not want to work baggage service, however, because it involved interacting with irate passengers whose bags had been lost or misrouted. He asked instead that Zimmerman create a job exclusively in operations for him.[2] This she declined to do, but suggested that he apply in Phoenix or Las Vegas, large stations where there are dedicated operations positions.

---

1. Between the time of these events and the time of trial, the station supervisor was married. Although her name in 1992 was Staslie Huttanus, her married name at the time of trial was Zimmerman. For simplicity, we will refer to her as Staslie Zimmerman.

2. The operations agent monitors radio transmissions from en route and inbound aircraft, prepares weigh-and-balance calculations for pilots, and assists with equipment and baggage on the ramp.

Tope did not want to relocate, so he did not apply for jobs outside of El Paso. On May 21, 1992, Zimmerman again wrote Tope, stating that he was suspended from employment with America West pending termination. There was evidence that Tope's termination papers had been prepared long before this, on the same day that the reserves on his compensation claim had been increased to $130,000, making it one of the most expensive compensation claims America West had ever experienced. Tope was formally terminated from America West on June 1, 1992. His doctor released him to return to light duty about one month later.

Tope went back to school for a time following his termination from America West. He then bought a small business, a Postal Annex, which he had just sold at the time of trial. Once he had received a full release from Dr. Vierra, he applied for work with Southwest Airlines. He was not working at the time of trial.

### STANDARD OF REVIEW

America West challenges the legal and factual sufficiency of the evidence supporting the jury's liability findings and damage awards. When reviewing a legal sufficiency challenge, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the jury's finding, and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). If such evidence amounts to more than a mere scintilla, that is more than a basis for mere surmise or suspicion, then the legal sufficiency challenge fails. *Sherman v. First Nat'l Bank in Center, Texas,* 760 S.W.2d 240, 242 (Tex.1988); *Stafford,* 726 S.W.2d at 16; *Paragon Hotel Corp. v. Ramirez,* 783 S.W.2d 654, 657 (Tex.App.—El Paso 1989, writ denied).

We evaluate a factual sufficiency challenge by reviewing all evidence and rea-

sonable inferences therefrom and should be sustained only if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). In making this evaluation, we may not simply substitute our judgment for that of the fact finder in the lower court, particularly with regard to assessing the credibility of the witnesses. *Paragon,* 783 S.W.2d at 658.

Plaintiff's cross-point involves the exclusion of expert testimony, which we review for abuse of discretion. *E.I. du Pont de Nemours and Co., Inc. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995). The test for abuse of discretion is not whether in the opinion of this court, the facts present an appropriate case for the trial court's action, nor whether this court would have ruled differently. *Id.* at 558; *Loftin v. Martin,* 776 S.W.2d 145, 146 (Tex.1989); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Rather, the test is whether the trial court acted without reference to any guiding rules or principles. *Id.; Downer,* 701 S.W.2d 238, 241–42.

### Evidence of Discriminatory Conduct

The jury in this case found that America West discharged Michael Tope in violation of the Texas Worker's Compensation Act ("the Act").[3] To prevail in a claim of wrongful termination under the Act, the employee must establish a causal link between the discharge and the employee's invocation of rights under the Act. *Trevino v. Corrections Corp. of America,* 850 S.W.2d 806, 808 (Tex.App.—El Paso 1993, writ denied). Plaintiff may show the causal connection by circumstantial evidence and by reasonable inferences arising from it. *Acme Boot Co., Inc. v. Montenegro,* 862 S.W.2d 806, 808 (Tex.App.—El Paso 1993, no writ). Circumstantial evidence that has been recognized as supporting a finding of unlawful discrimination includes: (1) the employer's knowledge

---

**3.** TEX.LAB.CODE ANN. § 451.001 prohibits an employer from discharging or in any other manner discriminating against an employee because the employee has filed a compensation claim in good faith, hired a lawyer, or instituted a proceeding under the Act, or testified in a proceeding under the Act. TEX.LAB.CODE ANN. § 451.001 (Vernon 1996).

of the compensation claim by those making the decision to terminate; (2) a negative attitude towards the employee's injured condition; (3) failure to follow company policy in disciplining the employee; (4) discriminatory treatment of the injured employee compared to other employees with the same disciplinary problems; and (5) providing incentives to refrain from reporting on-the-job injuries. *See Paragon,* 783 S.W.2d at 658–59. Plaintiff need not show that the compensation claim was the sole cause of the termination; evidence is sufficient if it shows the claim was a contributing factor in the employer's decision to discharge the employee. *Investment Properties Management, Inc. v. Montes,* 821 S.W.2d 691, 694 (Tex.App.—El Paso 1991, no writ); *Azar Nut Co. v. Caille,* 720 S.W.2d 685, 687 (Tex.App.—El Paso 1986), *aff'd,* 734 S.W.2d 667 (Tex.1987). Once the plaintiff has established a causal link, the burden shifts to the employer to show a legitimate reason for the discharge. *Trevino,* 850 S.W.2d at 808.

America West first contends that the evidence is factually and legally insufficient to support judgment for Tope because Tope did not prove a causal connection between his compensation claim and his discharge. America West maintains that the evidence establishes that Tope was discharged because he was physically unable to return to his job as ramp agent, he refused the job as baggage service agent which was offered to him and which would meet his physical restrictions, and he would not seek a position that would accommodate his restrictions at any other America West field station. That was certainly America West's theory at trial, but the jury having rejected it, we must review the evidence through the prism set out above.

■ There was no direct evidence of discriminatory discharge here. Thus, Tope had to rely on circumstantial evidence to prove his case. Viewing the evidence in the light most favorable to the verdict, and disregarding all else, we believe there was sufficient evidence to withstand a legal sufficiency challenge.

First, there is no dispute that Staslie Zimmerman and Raymond Antonino (America

West's vice-president for station administration), the two people who decided to terminate Tope, knew of his compensation claim. Indeed, the reason they relied upon for his termination was that his on-the-job injury had disabled him from performing the duties of his former job as ramp agent. Moreover, plaintiff presented evidence that America West had a history of terminating employees with worker's compensation claims: the record contains evidence of two other such firings.

Second, the record contains evidence of the airline's negative attitude toward Tope's injury. Jane Midkiff, risk manager for the airline, told El Paso's new station manager that Tope's claim was costing the company a lot of money. Although Midkiff testified she normally would not receive medical reports on injured employees, she was sent copies of Tope's. Although she had been in the insurance business since 1942, she knew nothing of the Texas law prohibiting discriminatory treatment of worker's compensation claimants. Zimmerman wrote Tope in April 1992, telling him if he did not accept the baggage service position in El Paso or find another position acceptable to him at another station, he would be terminated as of June 1, although both the date of the letter and the date of his termination were before his doctor ever released him for return to light duty. The evidence established that his termination papers were prepared long before the June 1 deadline, on the same day the reserves on his claim were increased to $130,000, making it the second highest worker's compensation claim ever at America West.

Third, there is evidence that America West failed to follow company policy in the steps it took to terminate Tope. Raymond Antonino, vice-president of station administration and one of the individuals who made the decision to fire Tope, testified that inability to return to work after an on-the-job injury is considered unavailability under the company work rules, and is subject to progressive discipline. This classification of on-the-job injury as an availability problem was seconded by Carroll Soutas, America West's employee records supervisor. Indeed, Staslie Zimmerman's let-

ter of April 1992 states that Tope's "unavailability leaves the Company no choice but to terminate your employment." Company rules state that progressive discipline for unavailability follows this pattern: when an employee is unavailable due to sickness, no action is taken for the first two absences. The employee is given a verbal warning for the third absence. The fourth absence, the employee is given a warning letter. The fifth absence, the employee is given a final warning and on the sixth absence, the employee is recommended for termination. Antonino testified that progressive discipline did not apply to Tope because he was not being corrected for deficient performance, but it is undisputed that he was told of the Company's intent to dismiss him in the first letter he received, and was only given a second written notice when he pointed out that company rules required his suspension prior to termination. A reasonable jury could conclude America West failed to follow its own progressive discipline policy.

Company policy was not followed in other aspects of Tope's treatment as well. Corporate counsel B.K. Boothe participated in drafting the termination letter to Tope, and was copied on all correspondence to Tope concerning his termination. There was evidence that this was not the usual procedure. Although company convenience leave was offered across-the-board to all employees when America West entered bankruptcy, an option which allowed employees to keep all company benefits save salary for up to six months, company convenience leave was never offered to Tope.

Fourth, Tope presented evidence of discriminatory treatment as compared to other employees incapable of performing their usual duties, for reasons other than on-the-job injury. There was testimony that the El Paso station created a designated operations job, not cross utilized, for at least four employees while they were pregnant. One such employee testified that anyone who was pregnant could work operations-only without assisting at the ramp. The same employee testified that sometimes an employee could be assigned operations-only even when not pregnant. A male employee with a rotator cuff injury unrelated to his job was allowed to work operations-only for several months without being required to assist with bags on the ramp. Again, there was evidence that America West offered company convenience leave to all employees when it entered bankruptcy, in an effort to limit involuntary layoffs. This option was not extended to Tope, however, in lieu of termination.

Fifth, there was evidence that America West would give injury-free stations a safety award as incentive for reducing on-the-job injuries. There was also evidence that America West's employment application required a listing of all worker's compensation claims for the past five years, but only the past two years for injuries not job-related. Jane Midkiff, the risk manager, would send memoranda to field station managers listing all employees with more than one worker's compensation claim, to be placed in their personnel file. Finally, it was established that America West at that time maintained a "retro" worker's compensation policy. In this type of policy, the company actually pays dollar-for-dollar every expense related to worker's compensation claims, rather than paying a fixed premium after which the insurance carrier assumes the risk of claims. The company risk manager is typically more involved in claims under a retro policy because it is the company's money that is at stake.

We believe this evidence clearly exceeds the legal sufficiency test that some evidence, more than a scintilla, support the jury's verdict. As to the factual sufficiency challenge, we have considered the airline's position that it offered Tope the one job his supervisor thought he could perform with his injured hand, baggage service agent, that he rejected it and never attempted to find an operations job at another field station. This, the airline argues, more than met the employer's obligation not to discriminate against the injured employee, and for the jury to find otherwise was manifestly unjust. The airline further argues that Jane Midkiff had no input into the decision to fire Tope, and thus any evidence on her attitude towards his injury was irrelevant. We have also considered the airline's position that its treatment of pregnant

employees and the injured male employee who were allowed to work operations-only was temporary, and also occurred before the airline's bankruptcy when it had a heavier flight schedule, more employees, and thus more flexibility. We conclude that although the jury would have been free to accept these arguments and find for the defendant, they are not so compelling as to mandate reversal for correction of a manifestly unjust outcome. We decline to overturn the jury's verdict on these grounds. America West's Points of Error One, Two, and Three are overruled.

### Evidence of Damage Mitigation

In Points of Error Four and Five, America West urges that the evidence conclusively established Tope's failure to mitigate damages, and alternatively that the damages found by the jury were against the great weight of the evidence for the same reason. We disagree.

A wrongfully discharged employee has a duty to mitigate damages by making a good faith effort to obtain and retain employment. *Gulf Consolidated International Inc. v. Murphy,* 658 S.W.2d 565, 566 (Tex. 1983) (opin. on rehearing). Mitigation is a defensive issue upon which America West bore the burden of proof at trial. *Id.* Thus, America West has the difficult task of demonstrating that it established as a matter of law Tope's failure to mitigate, or that the jury's findings on this issue were so against the great weight and preponderance of the evidence as to be manifestly unjust. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

America West contends that because Tope refused its unconditional offer of employment as a baggage service agent, which would have given him the same wages and benefits as before his injury, that failure to mitigate was established as a matter of law. Rejection of a job offer from the former employer alone, however, does not conclusively show failure to mitigate. *Azar Nut Co. v. Caille,* 720 S.W.2d 685, 687–88 (Tex. App.—El Paso 1986), *aff'd,* 734 S.W.2d 667 (Tex.1987). Generally, the reasonableness of plaintiff's explanation for rejecting a job offer, and the adequacy of efforts to mitigate, are fact questions properly left to the jury. *Id.; Pacesetter Corp. v. Barrickman,* 885 S.W.2d 256, 263 (Tex.App.—Tyler 1994, no writ).

Tope advanced two reasons for declining the offer of employment as baggage service agent. First, he simply did not want that job because of the customer contact involved, and America West knew it. Tope had previously accepted a pay cut in order to avoid passenger contact, and he testified that baggage service was the most mentally demanding position at the airport. Second, Tope testified that he was physically unable to accept the job when it was offered, as he had not yet been released for light duty. The letter offering the baggage service position was dated April 1992; Tope was not released for light duty until July 1, 1992. From this evidence, a jury could reasonably believe that Tope could not accept the position.

Further, the record reveals that Tope attended school for a year following his discharge from America West, then opened and ran his own business. Once receiving a full release, he applied for a job at Southwest Airlines. These, too, are factors the jury could consider in determining that Tope adequately mitigated his damages. Points of Error Four and Five are overruled.

### Evidence of Mental Anguish

In its Points of Error Six and Seven, America West urges that the jury's finding on mental anguish were against the great weight and preponderance of the evidence, and the amounts awarded for past and future mental anguish damages found were excessive. In a recent discussion of mental anguish evidence, the Texas Supreme Court has emphasized that mental anguish damages cannot be awarded without "direct evidence of the nature, duration, or severity of [plaintiffs'] anguish, thus establishing a substantial disruption in the plaintiffs' daily routine," or other evidence of " 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.' " *Saenz v. Fidelity & Guaranty Insurance Underwriters,* 925 S.W.2d 607, 614 (Tex.1996), *quoting Parkway Co. v.*

*Woodruff,* 901 S.W.2d 434, 444 (Tex.1995). Moreover, the court has made clear that the amount of a mental anguish award must be supported by evidence that the sum is fair and reasonable compensation for the damage suffered. The court has specifically rejected the notion that "translating mental anguish into dollars is necessarily an arbitrary process for which the jury is given no guidelines," and which therefore is not amenable to evidentiary review by the courts of appeals. *Saenz,* 925 S.W.2d at 614. The court has been forthcoming about what does *not* constitute sufficient evidence to support a mental anguish award. It has thus far been silent, however, as to what evidence *is* sufficient to establish a plaintiff's right to recover mental anguish damages, as well as what evidence suffices to sustain the fairness and reasonableness of an award. The court has acknowledged that the "impossibility of any exact evaluation of mental anguish requires that juries be given a measure of discretion in finding damages" but at the same time admonished that "[j]uries cannot simply pick a number and put it in the blank." *Id.*

▮▮▮ Michael Tope testified about his state of mind when he received Zimmerman's letter of April 1992 telling him he had a little over one month to accept the baggage service job, find a job in another city, or be terminated, all during a time when he had not been released by his doctor for even light duty. He told the jury he did not want to travel to other field stations because:

> I was in therapy half the day almost every day, and I have to take time out to fly around the country and interview with potential bosses ... it didn't make sense to me to go interview for a position that I couldn't even work. My doctor hadn't released me yet.

His understanding of his options after the April 1992 letter was:

> [I]f I did not report to work June 1st, I was terminated.... [I]t made me angry, but it scared me half to death, actually. I felt that—there goes my career if I don't find a job. I started with America West when they were relatively young, and I was very young.... I didn't have any intention of leaving America West Airlines.

It was the only job I knew how to do. I started when I was 20. They, America West, they gave me an ultimatum saying that I had to report to work. It scared me. I knew I couldn't do it. My doctor knew I couldn't do it. They were putting me in a very uncomfortable situation that I didn't know what to do.

Later, when asked how his discharge had effected him, he testified:

> Well, it was my career at that time. They took it away. They didn't give me any option whatsoever. They weren't very flexible with me. In the past, they had shown flexibility with some of the employees. I was very angry with them.... I was very scared. I didn't know what to do. I knew that I couldn't go out and get another job because of my hand, it was still in bandages, it was still an open wound at the time. I didn't have any idea where to go and what to do. I was frustrated. I was devastated. I mean, I didn't know what I was going to do. I was very angry.

When asked how he was feeling presently, he responded:

> I'm doing better now. I'm still angry with America West Airlines. Nothing personal against their employees, or anything like that, I still have friends that work for them. But I still don't like the idea that they fired me because I was injured, and because I filed a workers' comp claim. And after I saw some of the evidence in the past few days here ... they just didn't do it to me, they did it to several people. It makes me even more angry at them.... I think [these feelings] will subside for a while, but I think I will always be angry with them. They didn't treat me fairly at all.

We find this evidence is sufficient to support the award for past mental anguish. We believe that the formulation of factual sufficiency review, that the jury's response must be "against the great weight and preponderance of the evidence," implies some sort of balancing test. That is, there should generally be evidence contrary to the jury's finding, not just weak evidence supporting it. Evidence contradicting Tope's testimony that he was

"scared to death," "devastated," "frustrated," and "very angry" is not present here.

As to the amount of money awarded as compensation for mental anguish, we note that plaintiff asked the jury to award him $250,000 in past mental anguish damages. The jury gave Tope far less than that amount, finding $180,000 in past mental anguish. The evidence before the jury was that Tope was forced to choose between a job he did not want or seek another job in another city, before he was ever released by his doctor, and while he was still in daily physical therapy. Declining this Hobson's choice, he was summarily fired, still before he was ever released for even light duty. We find the evidence in this case was sufficient to support the amount awarded for mental anguish.

The damage award for future mental anguish, however, is problematic. Tope began testimony about his present state of mind by saying "I'm doing better now," further states "I think [these feelings] will subside for a while" but also states "I'm still angry with [them]," and "I think I will always be angry with them." Cases are legion stating mere anger is not sufficient to support an award of mental anguish damages. *Parkway,* 901 S.W.2d at 444; *Stewart Title Guaranty Co. v. Aiello,* 911 S.W.2d 463, 472 (Tex.App.—El Paso 1995, writ granted); *Nix v. Born,* 870 S.W.2d 635, 641 (Tex.App.—El Paso 1994, no writ); *Cronin v. Bacon,* 837 S.W.2d 265, 269 (Tex.App.—Fort Worth 1992, writ denied); *Freedom Homes of Texas, Inc. v. Dickinson,* 598 S.W.2d 714, 718 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Tope's own testimony indicates that by the time of trial, he was recovering well from the mental suffering inflicted by his former employer's treatment of him. Mindful though are we of the deference we must pay to the jury's assessment of damages for mental anguish, we conclude that the evidence is factually insufficient to support the jury's award of future mental anguish damages.

We therefore overrule America West's Points of Error Six and Seven as to the award of past mental anguish damages. We sustain the points, however, as to the jury's

award of $95,000 in future mental anguish damages, subject to a voluntary remittitur pursuant to TEX.R.APP.P. 85(e). *See Paragon,* 783 S.W.2d at 663.

### *Exclusion of Psychological Testimony*

In a single cross-point, Tope urges that the trial court wrongly excluded testimony by his treating mental health worker, Sylvian Gibson. Finding the court was within its discretion in excluding the evidence, we overrule the cross-point.

Sylvian Gibson is a clinical social worker with a B.S. degree in mathematics and chemistry, a master's degree in psychology, and an M.S.W. degree. She is a member of several national and local psychotherapy organizations, a diplomate of the American Board of Examiners, and has been a clinical social worker for seventeen years. She is licensed as a psychologist in the state of New Mexico, and as a social worker in Texas. She saw Tope forty-two times, and treated him for traumatic stress syndrome stemming partly from his on-the-job injury, but most from his termination.

Gibson did not administer Tope the MMPI or other traditional diagnostic tests recognized by the psychology profession. She diagnosed him by comparing his symptoms with those outlined in the DSM–III: recurrent intrusive recollections, sleep disturbance, difficulty relating to people, trouble concentrating, and constricted affect. When asked how her diagnosis of Tope could be verified or tested, she stated "I suppose you could ask him if he was suffering all these symptoms." She did not take notes of their sessions, believing this provided confidentiality and allowed her to concentrate on the patient. She uses an eclectic approach to treatment, testifying:

> I have studied nearly all of them [modes of treatment] and find something out of all of them that are useful and will apply whatever works at the time.... [using] just a little bit of everything. What works at one time won't at another, and vice versa.

When asked about peer review of her methods, she testified that a frequent method of review was submission of bills for payment

by insurance companies. She has also presented her eclectic approach at psychotherapy conferences.

America West objected to Ms. Gibson's testimony as an expert because she did not follow generally recognized techniques, had not taken notes of her sessions, had not administered traditional psychological tests, did not have a medical degree or a Ph.D. in psychology, could not point to any publications supporting her method of treatment, and would testify to opinions that could be neither validated not refuted. The trial court sustained the objection and excluded her testimony.[4]

We review the trial court's evidentiary rulings for abuse of discretion. The law governing exclusion of Ms. Gibson's testimony as an expert here is set forth in *Robinson*, 923 S.W.2d 549. *See also Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591–95, 113 S.Ct. 2786, 2796–97, 125 L.Ed.2d 469, 482–84 (1993). In *Robinson*, the Texas Supreme Court adopted the reasoning of the U.S. Supreme Court in *Daubert*, holding that TEX.R.CIV.EVID. 702 requires, upon objection, that the proponent of expert testimony must show the expert is qualified, and that the expert's testimony is relevant to the issues in controversy and based upon a reasonable foundation. *Robinson*, 923 S.W.2d at 555. It is the trial court's responsibility to make the preliminary determination as to whether the proffered testimony meets the criteria of Rule 702. *Id.* It is in this "gatekeeper" role that the trial judge excluded the testimony of Sylvian Gibson.

America West first objected to Ms. Gibson's opinion evidence on the grounds she was not qualified. To the extent that the trial court's exclusion of her testimony might have been based on that ground, we find it was error. There are no definitive guidelines to determine whether a witness's education, experience, skill, or training qualifies that person as an expert. *Longoria v. United Blood Services*, 907 S.W.2d 605, 613 (Tex.App.—Corpus Christi 1995, writ granted). That Ms. Gibson did

not possess an M.D. or Ph.D., therefore, should not have prevented her testimony if she was otherwise qualified, and we find she was amply so. She possessed two graduate degrees, was licensed to practice clinical psychology in New Mexico and Texas, belonged to numerous professional societies, and had been engaged in her profession for almost two decades. Clinical social workers have been specifically recognized as entitled to the same psychotherapist-patient privilege that is afforded psychiatrists and psychologists, as "drawing a distinction between the counseling provided by costly psychotherapists and the counseling provided by more readily accessible social workers serves no discernible public purpose." *Jaffee v. Redmond*, 518 U.S. ——, —— – ——, 116 S.Ct. 1923, 1931–32, 135 L.Ed.2d 337, 348–50 (1996). We believe this rationale applies equally in assessing the qualifications of a clinical social worker to give expert testimony, and the challenge to Ms. Gibson's qualifications was specious.

We turn, then, to the second prong of the *Robinson* test. In order to constitute scientific knowledge which will assist the trier of fact, testimony must be relevant and reliable. *Robinson*, 923 S.W.2d at 556. There is little question that Ms. Gibson's observations of Tope during forty-two therapy sessions were relevant to his mental anguish claim. The reliability of her testimony, therefore, becomes our main inquiry. Factors that the trial court may consider in deciding reliability of expert testimony include but are not limited to: (1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses which have been made of the theory or technique. *Robinson*, 923 S.W.2d at 555, *see also Daubert*, 509 U.S. at

---

4. Plaintiff then offered Ms. Gibson as a lay witness, America West objected on hearsay grounds, and the trial court again excluded her testimony.

Plaintiff does not challenge this ruling, so we do not reach it here.

591–95, 113 S.Ct. at 2796–97, 125 L.Ed.2d at 482–84.

Here, applying the *Robinson* factors to Ms. Gibson's testimony, we cannot say the trial court acted without reference to guiding principles. Her diagnosis was subjective, based upon Tope's statements, and could be tested only by asking him again about his symptoms. Peer review of Gibson's method was limited, and she offered no examples of publication of her work. The potential rate of error for her diagnosis was wholly unexplored. Although it does appear her underlying techniques are accepted as valid by the psychological community, and that they are generally used for the non-judicial purpose of therapy, viewing the factors as a whole we cannot say the trial court abused his discretion in determining Ms. Gibson's opinion did not rise to the level of reliability necessary under the *Robinson* test. Plaintiff's crosspoint is overruled.

## CONCLUSION

We find no error in the proceedings below, save the jury's award of $95,000 in future mental anguish damages. We must therefore reverse and remand the entire case for new trial unless Tope wishes to voluntarily remit the $95,000 award found to be error. If he does so within the fifteen days allowed by Tex.R.App.P. 85(e), the judgment as modified shall be affirmed, subject to recalculation of interest.