COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

PHILLIPS PETROLEUM COMPANY,               )

                                                                              )              No.  08-01-00447-CV

Appellant,                          )

                                                                              )                 Appeal from the

v.                                                                           )

                                                                              )               
70th District Court

JAMES BRANTLEY and BETH
BRANTLEY,     )

                                                                              )           
of Ector County, Texas

Appellees.                          )

                                                                              )                
(TC# A-100,798)

                                                                              )

 

MEMORANDUM  OPINION

 

Appellant Phillips
Petroleum Company (APhillips@) appeals from a final judgment that
denied Phillips= plea in
intervention asserting a subrogation interest. 
On appeal, Phillips raises four issues for review, arguing that the
trial court:  (1) erred in denying its
subrogation claim because the Amade
whole doctrine@ does not
apply to ERISA qualified health insurance plans; (2) erred in denying Phillips= motion for leave to file a second
amended plea in intervention; (3) abused its discretion in excluding additional
evidence or alternatively, in denying Phillips=
motion to reopen evidence; and (4) erred in finding that Appellees
had not been Amade
whole@ by the
settlement agreement.  We affirm.








This appeal arises
out of a personal injury suit, in which Appellees
James Brantley and Beth Brantley filed suit against Jared Whiles, seeking
monetary damages resulting from an automobile accident.  During the course of the trial, the parties
reached an oral settlement, in which Mr. Whiles agreed to pay $500,000 for
complete release of all claims with the parties to pay their own costs.  The trial court treated the settlement as a
Rule 11 agreement.  On June 13, 2001, Appellees requested a hearing for release of the settlement
proceeds held in the registry of the court. 
The hearing was initially scheduled for June 18, 2001, but on June 14,
2001, the trial court granted a motion for continuance from Aetna US Healthcare
(AAetna@)
and The Rawlings Company (ARawlings@) and rescheduled the hearing for July
13, 2001.  On June 18, 2001, Aetna and
Rawlings filed their plea of intervention, alleging that as lienholders,
they had a subrogation interest in the amount of $162,080.96.  On July 13, 2001, the day of the hearing, the
plea of intervention was amended to include Phillips as an intervenor.

At the July 13,
2001 hearing, Intervenors Phillips, Aetna, and
Rawlings, (collectively AIntervenors@)
argued that they had a subrogation interest in the distribution of the
settlement proceeds.  Specifically, Intervenors asserted that Appellee
James Brantley was covered by a healthcare policy through his employer,
Phillips Petroleum Company, and in connection with the injuries he sustained in
the accident, Phillips paid approximately $165,000.  Intervenors argued
that their subrogation interest in the case was based on a contractual
provision in the healthcare policy that allows Phillips to recover from any
third party responsible for Mr. Brantley=s
injuries.  Intervenors,
however, did not offer the contractual provision into evidence.[1]








Following the
hearing, Phillips on July 18, 2001, filed a brief in support of its plea in
intervention, which included as exhibits, a business records affidavit from
Rick L. Ryan, and the summary plan description for Phillips Petroleum
Company.  In its supporting brief,
Phillips alleged for the first time that it was a self-funded, ERISA (Employee Retirement
Income Security Act) qualified health insurance plan and argued that any state
law claims involving the interpretation of an ERISA qualified benefit plan were
preempted by federal law.  On July 19,
2001, Phillips filed with the court its AIntervener=s Response to Plaintiff=s Contention That ERISA Preemption Must
Be Affirmatively Plead and Alternatively Motion For
Leave to File Amended Plea In Intervention.@  There was no hearing on Phillips= motion nor was there a ruling of the
motion in the record prior to the trial court=s
judgment.  On July 31, 2001, the trial
court rendered a final judgment, finding in favor of Appellees
on the intervention claim of Phillips, Aetna, and Rawlings, specifically
denying the claim on the basis that Appellees had not
been made whole for their damages by the settlement.

On October 11,
2001, the trial court held a hearing on Phillips=
motion for new trial.  At that hearing,
Phillips requested that the court announce a ruling on its motion for leave to
file a second amended plea in intervention. 
The trial court informed Phillips that it had received a request after
the original hearing to amend the petition and had denied that request.  Phillips then asked the court whether it had
considered the evidence submitted with its brief in support of the plea in
intervention and made an oral motion to reopen the evidence at that time.  The trial court denied Phillips= motion to reopen and also denied its
motion for new trial, which asserted that the made whole doctrine did not apply
to Phillips because it is an ERISA qualified health benefit plan that is
governed by federal law.   Phillips now
brings this appeal.

Excluding
Additional Evidence or Denial of Motion to Reopen








In Issue Three,
Phillips argues that the trial court abused its discretion in excluding from
evidence the business records affidavit executed by Rick Ryan or alternatively,
the trial court abused its discretion in denying Phillips= motion to reopen the evidence.

At the July 13,
2001 hearing on its subrogation claim, Phillips argued that its interest in the
settlement proceeds arose from a contractual subrogation provision in Mr.
Brantley=s
healthcare policy plan with Phillips. 
Phillips also argued to the court that evidence at the hearing would
show that Mr. Brantley=s
injuries were related to the automobile accident, therefore Phillips was
entitled to recovery of $162,000 for payment of these medical expenses by the
insurance plan.[2]  Phillips also asserted that the made whole
doctrine had no application in this case because Mr. Brantley was made whole
for his loss.

With respect to
Phillips=
subrogation claim for $162,000, Appellees= counsel argued that Phillips had not
proven that its expenses were reasonable and necessary or attributable to the
accident and that Mr. Brantley had not been made whole with the $500,000
settlement amount.  In response to this
argument on the made whole doctrine, the following exchange occurred:

The Court:  And do you have a copy of the Ortiz case with
you?

 

[Brantley=s
counsel]:  Yes, I believe.

 

The Court:  I have read that but it=s been awhile.

 

[Brantley=s
co-counsel]:  No, sir.  I have some other cases that I may have a--

 








The Court:  Dealing with the Make Whole Doctrine.  I am mainly curious whether that means
whether you take into account the liability issues or does
that mean all of your damages regardless of liability?

 

[Appellees= counsel]:  It means that he does not recover--

 

The Court:  I guess I am confused and that=s why I am--

 

[Phillips=
counsel]:  Your honor, I have the case
here if you--

 

The Court:  Okay.

 

[Phillips=
counsel]:  I brought the book with
me.  I didn=t bring a copy of it but I will let you
look at that.

 

The Court:  Yeah, let me see it.

 

[Phillips=
counsel]:  But I think that it quite
honestly that the Ortiz case says that if you recovered on your loss and it=s attributable to monies that were paid
by the insurance company, they are entitled to recover even in the event that
you weren=t
completely made whole.

 

[Appellees= co-counsel]:  We have a couple others for the make whole,
Judge.  We have got Oss
v. United Services, 807 F2d 457 and Esparza v. Scott.

Oss
stands for the proposition that no matter what the insurance policy may say, a
subrogation provision merely confirms the existence of the right of possible
subrogation but may not expand the right.

Esparza goes on to say
so notwithstanding what the policy may say to avoid injustice, our courts must
still balance the equities to determine what amount, if any, the insurer should
receive.

I will provide those
to the Court.

 

The Court: Yeah.  If I--do y=all
have the cite that he gave?  Do you have copies for them, Counselor?

I am guessing that I=m going to need to read some of this,
probably won=t be able
to rule today.  So I just want to say
that so if you--if anyone wants to take time to read some of these cases and
respond in writing, I will make a decision by next week.

Why don=t y=all
provide copies to the other counsel, I will be happy
to review anything you want to send me . . . .

 








At the close of the hearing, the
trial court informed the parties that it would make a decision Aby next Friday,@
stating AI will
make a decision by next Friday.  I will
let everyone have until next Wednesday to send me anything that you want as
long as you provide it to the other counsel.@

On appeal,
Phillips argues that the trial court expressly solicited additional materials
to be submitted by the parties, therefore it abused its discretion by refusing
to consider the additional evidence Phillips submitted to the court on July 18,
2001.  Phillips=
contention is without merit.  The record
clearly shows, however, that the trial court merely provided the parties an
opportunity to respond to specific case law at issue during the hearing.[3]

Alternatively,
Phillips argues that the trial court abused its discretion by not allowing
Phillips to reopen the evidence to submit the business records affidavit,
especially since no party raised an objection. 
Phillips made its oral motion to reopen evidence at the motion for new
trial hearing and the trial court denied Phillips=
request without argument from any opposing party.








A trial court
abuses its discretion if it acts without reference to any guiding rules and  principles, in
other words, the court=s
act is arbitrary or unreasonable.  See
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert.
denied, 476 U.S. 1159, 106 S.Ct. 2779, 90 L.Ed.2d
721 (1986).  The mere fact that a trial
court may decide a matter within its discretionary authority in a different
manner than an appellant court in a similar circumstance does not demonstrate
that an abuse of discretion has occurred. 
Downer, 701 S.W.2d at 242.

Rule 270 of the
Texas Rules of Civil Procedure provides:

When it clearly
appears to be necessary to the due administration of justice, the court may
permit additional evidence to be offered at any time; provided that in a jury
case no evidence on a controversial matter shall be received after the verdict
of the jury.

 

Tex.R.Civ.P. 270.

The question of
whether to reopen a case for the purpose of admitting additional evidence is
within the sound discretion of the trial court, and its refusal to permit a
party to reopen for such purpose should not be disturbed by an appellate court
unless it clearly appears that such discretion has been abused.  Word of Faith World Outreach Center
Church, Inc. v. Oechsner, 669 S.W.2d 364, 366 (Tex.App.--Dallas 1984, no writ), citing Guerrero
v. Standard Alloys Manufacturing Co., 598 S.W.2d 656 (Tex.Civ.App.--Beaumont
1980, writ ref=d n.r.e.).  A party
seeking to reopen evidence should show: 
(1) the proffered evidence is decisive; (2) the party was diligent in
producing the evidence before closing; (3) its reception will not cause any
undue delay; and (4) refusing to allow additional evidence will result in an
injustice.  See Oechsner,
669 S.W.2d at 367; Guerrero, 598 S.W.2d at
658.  








Here, Phillips
made its oral motion to reopen after the trial court had rendered a final
judgment in this case.  Phillips has
failed to show due diligence in producing the evidence.  See Fisher v. Kerr County, 739 S.W.2d
434, 437 (Tex.App.--San Antonio 1987, no writ)(no due diligence shown where motion to reopen was made
seven months after trial and judgment had been rendered).  Therefore, we conclude the trial court did
not abuse its discretion.  Issue Three is
overruled.

Trial
Amendment 

In Issue Two, Phillips
contends that the trial court abused its discretion in denying its motion for
leave to file a second amended plea in intervention.  Specifically, Phillips argues that since no
party objected to the motion for leave to amend, the trial court erred in denying
its motion under Rules 63 and 66 of the Texas Rules of Civil Procedure.

Rule 63 of the
Texas Rules of Civil Procedure provides in pertinent part that: 

Parties may amend
their pleadings . . . provided, that any pleadings, responses or pleas offered
for filing within seven days of the date of trial or thereafter, or after such
time as may be ordered by the judge under Rule 166, shall be filed only after
leave of the judge is obtained, which leave shall be granted by the judge
unless there is a showing that such filing will operate as a surprise to the
opposite party.

 

Tex.R.Civ.P. 63.

Under Rule 66 of
the Texas Rules of Civil Procedure, which addresses trial amendments provides:

[I]f during the trial any defect, fault
or omission in a pleading, either of form or substance, is called to the
attention of the court, the court may allow the pleadings to be amended and
shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy
the court that the allowance of such amendment would prejudice him in
maintaining his action or defense upon the merits.

 

Tex.R.Civ.P. 66.








The filing of a
trial amendment is within the sound discretion of the trial court.  Zavala v. Trujillo,
883 S.W.2d 242, 245 (Tex.App.--El Paso 1994, writ
denied).  However, under Rules 63
and 66, a trial court has no discretion to refuse a trial amendment
unless:  (1) the party opposing the
amendment presents evidence of surprise or prejudice; or (2) the trial
amendment asserts a new cause of action or defense, and thus is prejudicial on
its face, and the opposing party objects to the amendment.  Zavala, 883 S.W.2d at 245; see also
Guereque v. Thompson, 953 S.W.2d 458, 463 (Tex.App.--El Paso 1997, pet. denied)(AEven where a new cause of action or
defense renders the amended pleading facially prejudicial to the opposing
party, case law suggests that the opposing party must object to the amended
pleading on the basis that a substantive change has been made.@). 

On appeal, the
complaining party has the burden of showing a clear abuse of discretion by the
trial court in refusing to permit the amendment.  See Hardin v. Hardin, 597 S.W.2d 347,
350 (Tex. 1980)(Campbell, J., concurring); European
Crossroads= Shopping
Center, Ltd. v. Criswell,  910 S.W.2d
45, 53 (Tex.App.--Dallas 1995, writ denied); Haskell
v. Border City Bank, 649 S.W.2d 133, 135 (Tex.App.--El
Paso 1983, no writ).  The mere fact that
the trial court refused to permit the amendment is not sufficient.  Hardin, 597 S.W.2d at 350 (Campbell,
J., concurring); Herrin Transp. Co., Inc. v.
Parker, 425 S.W.2d 876, 878 (Tex.Civ.App.--Houston
[1st Dist.] 1968, writ ref=d
n.r.e.).  The
party tendering the late pleadings has the burden of showing, either by the
statement of facts or by bill of exception, the facts attending presentation of
the amendment and the action of the trial court in refusing to permit it to be
filed and considered.  Hardin, 597
S.W.2d at 350 (Campbell, J., concurring); Herrin Transp.
Co. Inc., 425 S.W.2d at 878.  In the
absence of such a showing, the appellate court must presume the trial court did
not abuse its discretion.  Hardin,
597 S.W.2d at 350 (Campbell, J., concurring); Herrin Transp.
Co., Inc., 425 S.W.2d at 878; see also J-IV Investments v. David Lynn
Machine, Inc., 784 S.W.2d 106, 108-09 (Tex.App.--Dallas
1990, no writ).  








In this case, the
trial court conducted the hearing on Phillips=
plea in intervention concerning its subrogation claim on July 13, 2001.  Following the hearing, Phillips filed a
motion for leave to file a second amended plea in intervention on July 19,
2001.  Nothing in the record indicates
that Phillips requested a hearing on its motion nor
does a ruling either refusing or granting Phillips=
motion appear in the record prior to the date the trial court rendered its
judgment on July 31, 2001.  At the start
of the motion for new trial hearing held on October 11, 2001, the following
exchange occurred:

The Court:  What are we taking up today?

 

[Phillips=
counsel]:  Your honor, we have a motion
for new hearing, but we also have a couple of housekeeping items in connection
with this case and I would like to take those up first if I could, Your Honor.

 

The Court:  That would be fine.

 

[Phillips=
counsel]:  We had in this case filed a
second amended or we filed a motion for leave to file a second amended Plea of
Intervention in the case.  And there was
never any ruling entered on that motion and Your Honor, we would for the record
request the Court announce a ruling on that motion.

 

The Court:  Okay. 
I have had the original hearing and then I did receive after the hearing
a request to amend the petition and that request was denied.

 

[Phillips=
counsel]:  Okay.  Additionally, Your Honor, it is unclear to
us, we had filed pursuant to the Court=s
request, a brief in support of the Plea of Intervention and also attached to
that brief an affidavit executed by Rick Ryan with Phillips Petroleum Company.

 








The record before us contains no
statement of facts prior to the final judgment which shows the facts attending
Phillips=
presentation of its trial amendment and the trial court=s
action in refusing to permit the filing. 
Phillips= request
for announcement of a ruling on its motion after the trial court=s judgment had been entered also fails
to make such a showing.  No bill of
exception on this matter appears in the record. 
Therefore, we must presume the trial court acted properly in denying
Phillips= request
for leave to file its second amended plea in intervention.  See Herrin Transp.
Co., Inc., 425 S.W.2d at 878 (AThe
mere fact that the court refused to permit the amendment is not sufficient.@). 
Issue Two is overruled.

Made
Whole Doctrine

In Issue One,
Phillips contends the trial court erred in denying its subrogation claim
because state law concerning the Amade
whole doctrine@ does not
apply to claims by ERISA qualified health insurance plans, since ERISA federal
law preempts state law.  Alternatively,
Phillips argues in Issue Four that the trial court erred in finding that Appellees were not made whole by the settlement
agreement.  We will consider these issues
together.








Findings of fact
in a bench trial have the same force and dignity as a jury=s verdict. Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); Brooks
v. Housing Auth. of City of El Paso, 926 S.W.2d 316, 322‑23 (Tex.App.-‑El Paso 1996, no writ).  The trial court=s
findings of fact are reviewable for legal and factual
sufficiency of the evidence to support them. 
Brooks, 926 S.W.2d at 323.  In reviewing a Ano
evidence@ or legal
insufficiency attack, we must examine the record in the light most favorable to
the finding and disregard all evidence and inferences to the contrary.  Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); Jenkins v.
Jenkins, 16 S.W.3d 473, 477 (Tex.App.‑-El
Paso 2000, no pet.).  If there is
more than a scintilla of probative evidence supporting the finding of the trial
court, it must be upheld.  See City of Beaumont v. Spivey, 1 S.W.3d 385, 392 (Tex.App.‑‑Beaumont 1999, pet. denied); America
West Airlines, Inc.  v.
Tope, 935 S.W.2d 908, 912 (Tex.App.--El Paso
1996, no writ).  When a party attacks the
legal sufficiency of an adverse finding on an issue on which he has the burden
of proof, on appeal he must show that the evidence establishes, as a matter of
law, all vital facts in support of the issue. 
Sterner v. Marathon Oil Co., 767 S.W.2d 686,
690 (Tex. 1989).  In reviewing a
factual sufficiency challenge, we examine all the evidence to determine whether
the finding is so against the great weight and preponderance of the evidence as
to be manifestly unjust.  In re King=s Estate,
244 S.W.2d 660, 661 (Tex. 1951); see Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986).  The trier of fact is the sole judge of the credibility of the
witnesses and the weight to be given their testimony.  Omohundro v. Jackson, 36 S.W.3d 677, 680 (Tex.App.‑-El
Paso 2001, no pet.).  We review a trial court=s
conclusions of law de novo. 
Austin Hardwoods, Inc. v. Vanden
Berghe, 917 S.W.2d 320, 322 (Tex.App.-‑El
Paso 1995, writ denied).

On appeal,
Phillips asserts that the trial court erred in finding that it was not entitled
to recover on its subrogation claim because of the made whole doctrine.  Specifically, Philips contends that because
its health benefits plan is an ERISA qualified plan, any state law claims in
interpreting that plan are preempted by federal law.  In support of its argument, Phillips relies
on evidence attached to its brief in support of its plea in intervention, which
was filed on July 18, 2001, after the evidentiary hearing.  In an affidavit by Rick Ryan, Staff Director
of insurance plans for Phillips Petroleum Company, Mr. Ryan attested that the
health benefits plan covering Mr. Brantley was ERISA qualified and self-insured.  As discussed in our disposition of Issue
Three, this evidence was not introduced at the July 13 hearing.  In the trial court=s
findings of fact, it found that:

Prior to or during the hearing, no
claims were raised or based upon the Employee Retirement Income Security Act, >ERISA.=  There were no exhibits introduced, witness
testimony or argument by counsel at the non-jury trial regarding claims based
upon ERISA.

 








In its conclusions of law, the
trial court concluded that A[a]s
there were no issues raised under federal law, state
law applies to all parties=
claims.@  The trial court also concluded that A[a]s Intervenor
Phillips failed to plead a claim based upon ERISA, failed to introduce the
health care plan upon which their claims were based, failed to introduce any
type of evidence regarding a claim under ERISA, or failed to present any
argument regarding an ERISA claim to the court prior to or at the time of
trial, the Intervenor waived the preemptive effect of
applying ERISA with respect to its claims in the captioned matter.@

The record before
this Court contains no admissible evidence to support Phillips= contention that it is an ERISA qualified
plan.  Moreover, Phillips did not plead
that ERISA preempted the application of state law in this case in favor of
federal law.  The Supreme Court of Texas
has held that where ERISA=s
preemptive effect would result only in a change of the applicable law,
preemption is an affirmative defense which must be pleaded or is waived.  See Gorman v. Life Ins. Co. of North
America, 811 S.W.2d 542, 546 n.6 (Tex. 1991), cert. denied, 502 U.S.
284, 112 S.Ct. 88, 116 L.Ed.2d 60 (1991).  Phillips=
federal preemption claim cannot be raised for the first time on appeal as its
preemption argument affects the choice of law in this case, not the choice of
forum.  See id. at
545.  With respect to Issue One, we find
that the trial court did not err in concluding that state law applied,
specifically the made whole doctrine, because Phillips failed to plead or prove
it was an ERISA qualified health insurance plan and that ERISA federal law
preempts the application of state law in this case.  Issue One is overruled.








Alternatively,
Phillips argues in its fourth issue that the trial court erred in denying its
subrogation claim based on the court=s
finding that Appellees had not been made whole by the
settlement.  Specifically, Phillips
argues the trial court erred because it failed to follow the applicable law on
the made whole doctrine as expressed in Ortiz v. Great Southern Fire & Cas. Ins. Co., 597 S.W.2d 342 (Tex. 1980).

In this case, the
trial court issued the following relevant conclusions of laws:

4.         Based upon the evidence introduced at
the jury trial and non-jury trial, the court finds that the plaintiff=s settlement was inadequate to
compensate him for all the damages he sustained as a result of his accident
with defendant Jared Whiles.

 

5.         The plaintiff=s
damages are greater than the amounts he recovered from Jared Whiles who caused
his injuries.

 

6.         Under the make whole doctrine, the
plaintiff was not made whole for his losses. 
See Ortiz v. Great S. Fire & Cas. Ins. Co., 597 S.W.2d 342 (Tex.  1980).

 

7.         Intervenor
Phillips is not entitled to subrogation as the plaintiff=s
loss is greater than the amount recovered from Jared Whiles.

 

Insurers have a right of equitable
subrogation in order to prevent the insured from receiving a double
recovery.  Ortiz, 597 S.W.2d at 343.  An
insurer is not entitled to subrogation if the insured=s
loss is in excess of the amounts recovered from the insurer and the third party
causing the loss.  Id.
at 343.

In Ortiz, a
fire damages the Ortizes=
house and its contents.  Id.  The Ortizes had
obtained fire insurance on their house from Great Southern and Casualty
Insurance Company, but did not insure the contents of the house.  Id. 
Great Southern paid the Ortizes $4,000 for
repairs to the house.  Ortiz, 597 S.W.2d at 343.  In
their suit against the third party, the Ortizes
alleged damages in the amount of at least $4,000 to their real property and at
least $11,614 to their personal property. 
Id.  Great Southern
intervened in the suit, claiming a right to subrogation in the amount of
$4,000.  Subsequently, the parties
entered into a settlement agreement whereby all claims against the third party
were release for $10,000.  Id.








The court of
appeals affirmed the trial court=s
judgment, holding that Great Southern was entitled to complete reimbursement
for its $4,000 payment to the Ortizes.  Ortiz, 597 S.W.2d at
343.  The Supreme Court reversed,
holding that an insurer is not entitled to subrogation if the insured=s loss is excess of the amounts
recovered from the insurer and the third party causing the loss.  Id. at 344.  However, in so holding, the Court stated that
if any portion of the settlement agreement was intended as compensation for
damage covered by the insurer, the insurer, after deduction of its share of the
cost of collection, would be entitled to subrogation to the extent that the sum
of the insurance collected plus the amount allocated in the settlement
agreement to the covered damages exceeded the insured=s
loss.  Id.  The insurer has the burden to show what
amount, if any, of the settlement agreement was allocated to the insured
loss.  Id.  In that case, Great Southern failed to show
what portion, if any, of the $10,000 settlement agreement was intended for
damages to the insured real property.  Id.

Here, Phillips
sought to recover its subrogated interest in the amount of  $162,080.96 for medical treatment
received by Mr. Brantley in connection with injuries he sustained in the
automobile accident.  In its findings of
facts, the trial court found that as a result of the accident: (1) Mr. Brantley=s lost past earnings were $566,719 in
damages; (2) Mr. Brantley=s
lost future earning capacity is $1,125,553 in damages; (3) Mrs. Brantley=s past lost household services were
$29,190 in damages; and (4) Mrs. Brantley=s
future lost household services are $72,698 in damages.  Phillips does not challenge these findings on
appeal.  Rather, Phillips argues that
evidence in the record shows that $300,000 of the $500,000 settlement amount
was intended to compensate Phillips for Mr. Brantley=s
past medical expenses.  See Ortiz,
597 S.W.2d at 344.








Phillips had the
burden to show that Appellees recovered damages for
past medical expenses under the settlement agreement in order to be entitled to
its subrogation right.  See Ortiz,
597 S.W.2d at 344. 
During the trial on Appellees= lawsuit against Mr. Whiles, the
parties announced to the court that they had reached a settlement
agreement.  At that trial, Mr. Whiles=
attorney, Rick Strange, stated:

The defendant will pay
$500,000 in cash in exchange for a complete release with each side to pay their
own costs.

We had agreed
previously to split Dr. Rashbaum=s bill for testifying, so we are going
to honor that.  But any taxable cost,
everybody pays their own taxable costs and then the release will include Jared
[Whiles] and his liability carrier.

 

Phillips contends the record
clearly reflects that $300,000 of the settlement was intended to compensate Appellees for past medical expenses, directing this Court=s attention to Mr. Strange=s testimony at the July 13
hearing.  Mr. Strange testified that he
participated in the negotiations during trial that resulted in the settlement
of the case.  During direct examination
by Phillips= counsel,
Mr. Strange stated that the medical bills were the single most important factor
because that was the one objective number that could be looked at and used to
run calculations.  Since partial summary
judgment had been granted, the defense knew the jury would be instructed most
likely to award about $225,000 for the fractured wrist and the osteomyelitis and that number played a big factor in their
evaluations.  The number for the back
treatment was unknown since there was a lot of contention at trial as to
whether or not the back injury and treatment was a result of the accident.  Phillips=
counsel asked Mr. Strange if it was his opinion that $300,000 of the settlement
was to compensate Mr. Brantley for the past medical expenses.  Mr. Strange replied:








Well, at least I knew that the jury was
going to award $225,000.00.  The case had
been pending approximately five years at the time of trial and so the
prejudgment interest at that point was about, as I recall, 75 to 80 percent of
any award.  And so I knew that if the
jury agreed with us that the back was not part of the accident, I knew we were
looking at about a $300,000.00 recovery for past medical under the best of
situations.

 

Phillips=
counsel then asked Mr. Strange if that number factored into the payment that
was offered.  Mr. Strange replied, yes,
stating:

I mean we looked at best case, worse
case, did some assessment of risk.  But
even in our best case we took the $225,000 that we knew about and we factored
in the prejudgment interest award since it was going to be so significant and we
took that as a--well, we had to take that as a given in our analysis.

 

However, during cross-examination
by Appellees=
counsel, Mr. Strange, conceded that the parties=
never discussed how they were going to apply the settlement funds.  Mr. Strange stated that he did not recall
telling Appellees=
counsel how he had come up with his analysis. 
In terms of negotiations, Mr. Strange recalled that:

99 percent of the discussion was on the
amount.  There was some brief discussion
as everyone was leaving about how the check would be made out.  And I recall comments being made to make the
check out to you [Appellees=
counsel] and your clients.  I also recall
saying that we had notice at that time--I was more concerned about Mr. Wolovits than anyone, but that we had notice of other
interests and we had to take care of those. 
I recall that conversation but it was very brief and superficial.

 








After reviewing
the record, we find that the oral settlement agreement does not reflect what
portion of the $500,000 settlement was intended as compensation for Mr.
Brantley=s past
medical expenses.  While his analysis
factored in the jury most likely awarding Appellees
at least $225,000 for certain medical expenses related to the accident, Mr.
Strange acknowledged that the parties never allocated the settlement funds to
cover specific damages and he never discussed his risk analysis with Appellees. 
Considering this testimony, we cannot agree with Phillips that the
record clearly reflects that $300,000 of the settlement was intended to
compensate Appellees for past medical expenses.  We find that Phillips failed to meet its
burden in showing the amount of the settlement agreement that was allocated to
past medical expenses.  Therefore, the
trial court did not err in concluding Mr. Brantley was not made whole for his
losses under the made whole doctrine as addressed in Ortiz.  Issue Four is overruled.

Having overruled
all of Phillips= issues
for review, we affirm the trial court=s
judgment. 

 

 

 

December 11, 2003

DAVID WELLINGTON CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ. 











[1]
The other intervenors at the hearing, the law firm of
Wolovits & Gross, the law firm of Boldrick & Clifton, and Ms. Sally Osborn, administratrix of the Estate of James Thomas Osborn, Sr.,
asserted claims for attorney=s
fees.  These intervenors
are not parties to this appeal.





[2]
In the underlying suit, Mr. Brantley alleged that Mr. Whiles was negligent in
causing the accident, which inter alia
resulted in injury to his wrist.  Mr.
Brantley amended his original petition to add a medical malpractice claim
against Dr. Donald L. Wehmeyer.  In his amended petition, Mr. Brantley alleged
that Dr. Wehmeyer was negligent in performing bone
graft surgery on his hip bone to his fractured left wrist, which resulted in
post-surgical osteomyelitis of his left hip.  Apparently, there was some dispute among the
parties as to whether the medical expenses incurred in connection with the osteomyelitis were related to the automobile accident or the
result of Dr. Wehmeyer=s
medical treatment.





[3]
We note that this reading of the record is consistent with the trial court=s comments during the motion for new
trial hearing.  At that hearing, the
following exchange occurred:

 

[Phillips=
counsel]:  It [the affidavit in support
of the plea in intervention] was presented after the hearing.  You announced at the hearing that if we
wanted to submit additional material that we needed to do that by the following
Wednesday, which we did.

 

The Court:  Actually
what I intended was the law on the case. 
I was not going to take any new evidence but, you know, as far as any
brief on the law is what I intended.  So
anything that describes the legal position of the parties I reviewed and
admitted.